NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210077-U

NO. 4-21-0077

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 10, 2022
Carla Bender
4ᵗʰ District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| CHRISTOPHER B. HARRISON, | ) | No. 18CF426 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | John Casey Costigan, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed in part and remanded with directions, holding:

(1) Remand was required for new postplea proceedings in compliance with
Illinois Supreme Court Rules 604(d) and 605(b) on the counts to which defendant
pled guilty.

(2) The admission of certain other-crimes evidence, even if erroneous, did not
constitute first-prong plain error because the trial evidence was not closely
balanced as to whether defendant acted in self-defense.

(3) Defendant was not prejudiced by his trial counsel's allegedly erroneous
stipulation to admission of certain videos and photographs from his Snapchat
account in the proceedings to determine whether he should be sentenced as an
adult.

¶ 2    Defendant, Christopher B. Harrison, pled guilty to two counts of unlawful

possession of a stolen firearm, two counts of unlawful possession of a firearm without a firearm

owner's identification (FOID) card, two counts of unlawful possession of firearm ammunition without a FOID card, and unlawful possession of cannabis with the intent to deliver. Following a jury trial, defendant was also found guilty of two counts of second degree murder. The trial court imposed an aggregate sentence of 31 years' imprisonment, which included consecutive terms of 14 years' imprisonment for the two second degree murder convictions and 3 years' imprisonment for one of the counts of possession of a stolen firearm. The court also imposed concurrent terms of three years' imprisonment for the second count of possession of a stolen firearm, the two counts of unlawful possession of a firearm without a FOID card, and possession of cannabis with intent to deliver. The court entered judgments of conviction for the two counts of unlawful possession of firearm ammunition without a FOID card.

¶ 3        Defendant appeals, arguing that remand is required for strict compliance with Illinois Supreme Court Rules 604(d) (eff. July 1, 2017) and 605(b) (eff. Oct. 1, 2001) because the trial court failed to provide Rule 605(b) admonitions to defendant and defense counsel filed a facially deficient Rule 604(d) certificate. Defendant also argues evidence of other crimes and bad acts—namely, four videos from his Snapchat account—was improperly admitted at his trial. Finally, defendant argues defense counsel provided ineffective assistance where he stipulated to the admission of irrelevant, cumulative, and prejudicial Snapchat videos in the proceedings to determine if defendant should be sentenced as an adult.

¶ 4        We affirm in part and remand with directions.

¶ 5                            I. BACKGROUND

¶ 6                            A. Charges

¶ 7        Defendant was charged with six counts of first degree murder (720 ILCS 5/9-l(a)(1), (a)(2) (West 2018)), three counts of unlawful possession of a stolen firearm (*id.*

§ 24-3.8(a)), three counts of unlawful possession of a firearm without a FOID card (430 ILCS 65/2(a)(1) (West 2018)), two counts of unlawful possession of firearm ammunition without a FOID card (*id.* § 2(a)(2)), unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2018)), and unlawful possession of cannabis (*id.* § 4(d)). The charges stemmed from an incident on April 28, 2018, in which defendant allegedly caused the deaths of Joseph Gardner and Reginald Hart.

¶ 8                                      B. Guilty Plea

¶ 9          Defendant entered an open guilty plea to two counts of unlawful possession of a stolen firearm, two counts of unlawful possession of a firearm without a FOID card, two counts of unlawful possession of firearm ammunition without a FOID card, and unlawful possession of cannabis with the intent to deliver. The third count of unlawful possession of a stolen firearm, the third count of unlawful possession of a firearm, and the charge of unlawful possession of cannabis were dismissed upon the State's motion. The parties agreed to postpone sentencing for these offenses until after a trial was held on the six counts of first degree murder.

¶ 10                                   C. Pretrial Proceedings

¶ 11          Defendant filed a motion *in limine* to bar the State from presenting evidence at trial concerning the charges not before the jury and video evidence that he possessed a silver handgun, an AR-15 rifle, cannabis, and money. Defendant contended such evidence had little probative value and would serve only to unfairly prejudice him. At a hearing on the motion *in limine*, the parties indicated that the motion concerned four Snapchat videos that the parties had provided to the court. After hearing arguments, the court ruled that the videos were admissible.

¶ 12                                         D. Trial

¶ 13        At the jury trial on the charges of first degree murder, Noah Harrison, defendant's brother, testified that, at the time of the incident, he lived in a second-floor apartment with his mother, his 10-year-old sister, and defendant. Defendant was 17 years old at that time. On the night of the incident, Noah was in the living room playing video games. Noah's mother, Noah's sister, defendant, and defendant's girlfriend's baby were also in the apartment.

¶ 14        Noah testified that two men he did not know knocked at the door. They asked where defendant was, and Noah pointed them in the direction of defendant's bedroom. Noah assumed they were defendant's friends. They walked back toward defendant's bedroom. Approximately 5 to 15 minutes later, the two men ran up from the direction of defendant's bedroom. Defendant chased them carrying an assault rifle. Defendant said, "I got you all b*** a*** now." The two men tripped over each other and ran out the front door. Defendant ran out of the apartment after them. Noah then heard "a lot of gunshots." Defendant returned to the apartment with the assault rifle. Noah walked out of the apartment and saw the bodies of the two men at the bottom of the stairwell in front of the front door of the building.

¶ 15        Noah acknowledged that he previously told the police defendant said he "smoked" the two men because they tried to rob him. Noah testified that defendant seemed "wired" after the shooting and said he might vomit. Noah also acknowledged he told a detective prior to trial that the victims were "running for their lives" when defendant chased them.

¶ 16        Police officers who responded to the scene observed the bodies of the victims lying face down at the bottom of a staircase near the front door of the apartment building. The officers later learned that the victims were Hart and Gardner. The officers observed numerous bullet holes in the victims' backs and were not able to find a pulse on either of them. An officer observed a bag containing what appeared to by psilocybin mushrooms at the base of the

stairwell. There was also a partially opened backpack at the bottom of the stairs that contained a bag of cannabis.

¶ 17    Officers observed numerous shell casings on the floor at the bottom of the stairs near the bodies. The shell casings were .223 caliber shell casings, which are generally used in AR-15 style rifles. There was one shell casing on the stairs and no shell casings on the second floor. There was no blood on the stairs or on the second floor.

¶ 18    Several officers testified that they observed a Glock handgun near the bodies of the victims. Hart's mother testified that she owned a Glock handgun. She noticed it was missing several days after the incident, and she learned it had been recovered from the scene.

¶ 19    Several officers took defendant into custody on the night of the incident. When defendant exited his apartment prior to his arrest, he told officers he felt like he might pass out. Defendant reported he had been punched in the face. Several officers testified that they did not observe any injuries or blood on defendant. Defendant told the officers there was a bag of guns, including an AR-15 rifle, inside the doorway of the apartment.

¶ 20    Police officers obtained a warrant and searched defendant's apartment. An officer observed a bag just inside the door, which contained a disassembled AR-15 rifle, a sawed-off shotgun, a Beretta pistol, two AR-15 magazines that were taped together, a single AR-15 magazine, a digital scale, and one shell casing. An officer observed there was a brown shoelace tied to the Beretta.

¶ 21    A police officer testified that he searched defendant's bedroom on the night of the incident. The officer found a Beretta pistol carrying case in the drawer of a nightstand. He also located suspected cannabis in the bedroom. The parties stipulated that forensic testing showed the substance recovered from defendant's bedroom contained 183.1 grams of a substance

containing cannabis. The officer also located a grinder and plastic storage bags in defendant's bedroom. The officer stated that grinders were often used to grind larger pieces of cannabis, and plastic bags were used to store cannabis. Officers also located a digital scale in a black garbage bag along with several guns. An officer testified that digital scales are often used to weigh drugs.

¶ 22    Sergeant Darrell Stafford testified that he processed the crime scene. He collected a Glock handgun from the stairwell where the victims' bodies were found. He examined the Glock and determined there was no round in the chamber. Stafford also photographed and examined a shotgun that was in defendant's apartment. The barrel appeared to have been shortened and the shotgun appeared to have been painted black. Stafford found there were no shells in the shotgun. Stafford identified a photograph of 27 shell casings that he collected from the stairs and foyer of the apartment building. Stafford testified that there was damage to a metal baluster on the railing of the stairs that was consistent with a bullet hole. His analysis indicated the bullet was fired at a downward angle.

¶ 23    The parties stipulated to the admission of the AR-15 style assault rifle, two ammunition magazines, 27 shell casings, a Beretta handgun, a Glock handgun, and a Remington shotgun. All of these items were collected from the defendant's apartment building by the police. The parties stipulated that forensic testing revealed defendant's fingerprint was on one of the ammunition magazines.

¶ 24    Dustin Johnson, a forensic scientist from the Illinois State Police, testified that he tested several firearms in connection with the instant case—namely, a Beretta, a Glock, a "cut-down" shotgun, and an AM-15 semiautomatic rifle. He determined that all of the firearms were operable. Johnson stated the AM-15 rifle was commonly referred to as an AR-15 style rifle.

Johnson tested 27 fired cartridge cases submitted in connection with the instant case and determined that they had been fired from the AM-15 rifle submitted to the laboratory.

¶ 25    Mary Wong, a forensic scientist with the Illinois State Police, testified that she tested several samples submitted in connection with the instant case for gunshot residue. Gunshot residue was detected on samples taken from defendant's pants and left hand and on both hands of Gardner and Hart. This indicated defendant, Hart, and Gardner either discharged a firearm, were in the environment of a discharged firearm, or handled a gunshot residue related item.

¶ 26    Detective Darren Wolters testified that he searched Gardner's apartment the day after the incident. He recovered a hacksaw, the barrel and stock of a Remington shotgun, shotgun shells, and black spray paint. These items were related to a sawed-off shotgun found in defendant's apartment on the night of the incident. Officers obtained a search warrant for Gardner's girlfriend's phone and found a video of an individual spray painting the shotgun that was found in defendant's apartment with black spray paint. The video was created approximately five days before the incident.

¶ 27    Detective Bradley Underwood testified that he gathered text message and phone call data from Gardner's cell phone. Underwood learned Gardner and defendant had exchanged text messages relating to cannabis transactions during the week leading up to the shooting. Five days before the shooting, text messages between defendant and Gardner indicated defendant had provided Gardner with cannabis on credit. Gardner gave defendant a pair of expensive shoes to hold as collateral. Gardner sent defendant text messages thanking him for providing him with the cannabis. Gardner discussed his plans for selling it to others and told defendant he would pay him. Over the next two days, defendant and Gardner exchanged text messages concerning Gardner's progress in selling the cannabis.

¶ 28        Underwood testified that he found text messages between Gardner and Hart on Gardner's phone that indicated Gardner and Hart planned to go to defendant's residence on the night of the incident to rob defendant of guns, drugs, and money. Hart and Gardner began exchanging these text messages two days before the incident. In the text messages, Gardner stated he would "pull up" on defendant with a "sawed-off." Gardner stated he wanted defendant's pistol, and Hart could have the "ar." On the evening of the incident, Gardner sent a text message to Hart asking if they were going to "hit[ ] the lick." Hart replied, "Man we gettin [*sic*] this n***."

¶ 29        Underwood obtained a search warrant for defendant's Snapchat account. Over defendant's objection, four videos from defendant's Snapchat account were admitted into evidence and played for the jury. Each video was only a few seconds long. Underwood testified that all four videos appeared to have been filmed in defendant's bedroom.

¶ 30        The first video was from March 6, 2018. The video depicted defendant fanning out a large amount of cash with a pistol in his lap. The second video was from March 11, 2018. In the video, defendant held up a large bag of cannabis. The third video was dated March 24, 2018. In the video, a handgun was hanging from defendant's neck by a string. Underwood testified that the handgun was a Beretta.

¶ 31        The fourth video was from April 11, 2018. In the video, defendant was holding an AR-15 rifle with an olive-colored magazine and a silver flashlight attached to the side. Defendant pointed the AR-15 rifle at the camera. Underwood testified that, shortly after the incident, officers located the olive magazine in defendant's apartment and the flashlight in the foyer of the apartment building. There also appeared to be a silver handgun on defendant's bed

in the background of the video. Officers located the silver handgun in a garbage bag when they searched defendant's apartment shortly after the incident.

¶ 32 A recording of a conversation between Underwood and defendant on the night of the incident was introduced into evidence. In the recording, defendant asked why he was being charged with first degree murder, and Underwood replied that defendant shot two people in the entryway of his apartment building. Defendant responded, "After they already ran into my house and beat my a***."

¶ 33 Dr. Scott Denton was qualified as an expert in the field of forensic pathology. Denton testified that he performed autopsies on Hart and Gardner. Denton opined that Gardner's cause of death was multiple gunshot wounds. There were 13 gunshot wounds to Gardner's head, shoulders, back, arm, and hand. All but one bullet entered the back of Gardner's body. There was no evidence of close-range firing. Denton's examination of the wounds indicated the shooter was above and behind Gardner at the time of the shooting. Four of the wounds would have been fatal on their own.

¶ 34 Denton testified that Hart's cause of death was also multiple gunshot wounds. Denton's report stated there were eight gunshot wounds to Hart's head, back, and leg. Denton testified that several of these wounds would have been independently fatal. All of the entry wounds were on the back of Hart's body. The angle of one of Hart's wounds indicated he was lying face down when he received the wound. There were two entry wounds to the back of Hart's head that were very close to one another, which indicated Hart was not moving very much at the time he received the injuries. Denton's analysis of some of the entry wounds indicated the shooter would have been behind Hart at the time the shots were fired. There was no evidence of close-range firing.

¶ 35       During closing arguments, the State argued that violence erupted on the night of the incident because of defendant's guns, drugs, and money, which defendant had displayed on Snapchat. The State argued defendant did not shoot Hart and Gardner in self-defense. The State contended that, when defendant shot Gardner and Hart, the robbery was over, and they were running away.

¶ 36       Defense counsel argued defendant was justified in his use of force. Defense counsel alternatively argued defendant committed second-degree murder in that he acted under a sudden and intense passion resulting from serious provocation by the deceased or that he had an unreasonable belief that circumstances existed that justified his use of force.

¶ 37       The jury found defendant guilty of second degree murder with respect to both victims.

¶ 38       E. Hearing to Determine Whether Defendant Should Be Sentenced as an Adult

¶ 39       The State filed a motion pursuant to section 5-130(1)(c)(ii) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-130(1)(c)(ii) (West 2020)) for a hearing to determine if defendant should be sentenced as an adult.

¶ 40       Prior to the hearing, the parties stipulated as to the foundation for and admission of 167 videos and photographs from defendant's Snapchat account that the State sought to introduce at the hearing. The parties agreed the court could view this evidence prior to the hearing. The Snapchat videos and photographs showed defendant displaying guns, drugs, and money. Some of the videos and photographs of drugs contained captions indicating the drugs were for sale. Other individuals were also present in some of the videos and photographs. In some of the videos and photographs, defendant and other individuals were carrying guns

outdoors in rural areas. In one of the videos, defendant was holding a gun while he was sitting in a car. Defendant was visible in most, but not all, of the videos and photographs.

¶ 41 At the hearing, the State asked the trial court to take judicial notice of the trial proceedings. The State called Detective Evan Easter as a witness. Easter testified that he had reviewed several Snapchat videos and photographs that had been admitted into evidence. Some of the photographs and videos indicated defendant was selling drugs other than cannabis, including ecstasy and the prescription drug Klonopin. Easter testified that, in some photographs, defendant was displaying banded stacks of money. Easter testified that, in the "drug world," people often banded stacks of money when they reached a certain denomination, often $500 or $1000. However, it was not unusual for people to take vanity shots with stacks of money and lie about how much they had.

¶ 42 Detective Underwood testified that defendant displayed dozens of different types of weapons in the admitted videos and photographs from his Snapchat account. However, only two firearms belonging to defendant were found when the police searched his apartment in connection with the instant case. It was possible that some of the weapons from the videos belonged to other people.

¶ 43 Underwood testified that, in one of the Snapchat photographs, defendant was with an individual named Sydney Mays fanning out money. There were also several videos of defendant and Mays with guns. The State asked Underwood about the significance of Mays. Defense counsel objected, and the court sustained the objection. However, the court agreed to take judicial notice of a criminal court file involving Mays.

¶ 44 Defendant submitted a letter from his father. Defendant's mother testified about defendant's positive qualities and difficulties he experienced during his childhood.

¶ 45          The State argued defendant should be sentenced as an adult. The State contended the offense, though not premeditated, was aggressive. The State noted defendant committed the offense 36 days before his 18th birthday and that he possessed a deadly weapon—namely an AR-15 rifle—during the commission of the offense. The State argued that although defendant did not have a criminal record, his history weighed in favor of sentencing him as an adult. The State noted there were many videos and photographs of defendant with guns and drugs on his Snapchat account. The State contended there was evidence indicating defendant had been selling cannabis for an extended period of time and that he sold other drugs illegally. The State argued the security of the public required sentencing as an adult due to the nature and circumstances of the offense and the fact that defendant's Snapchat account showed that he repeatedly possessed firearms outside of his apartment.

¶ 46          The State said: "In the videos with Sydney Mays *** that's the culture he was a part of and that he wanted to be. He hangs out with killers, and he is in fact a killer. He was convicted of two counts of second-degree murder. He was convicted of possession of a stolen firearm used to kill two people and drug offenses as well."

¶ 47          Defense counsel argued defendant should be sentenced as a juvenile because he had no history of violence and had a difficult upbringing in which he was exposed to cannabis and alcohol at a young age.

¶ 48          The trial court granted the State's motion to sentence defendant as an adult. The court found the factor of whether the offense was premeditated and aggressive weighed in favor of the State. The court noted defendant was nearly 18 years old at the time of the offense. The court found the Snapchat videos and photographs showed defendant had a history with drugs, money, and guns. The court found the factor of whether the security of the public required

sentencing as an adult weighed in favor of the State due to the facts of the offense and the evidence as to what occurred prior to the offense. The court also found defendant possessed a deadly weapon during the commission of the offense.

¶ 49                                F. *Sentencing Hearing*

¶ 50            Following a sentencing hearing, the trial court sentenced defendant to consecutive terms of 14 years' imprisonment for two counts of second degree murder and 3 years' imprisonment for possession of a stolen firearm. The court also imposed concurrent terms of three years' imprisonment for an additional count of possession of a stolen firearm, two counts of unlawful possession of a firearm without a FOID card, and possession of cannabis with intent to deliver. Defendant's aggregate sentence was 31 years' imprisonment. The court entered judgments of conviction for the two counts of unlawful possession of firearm ammunition without a FOID card.

¶ 51            After imposing the sentence, the trial court admonished defendant as follows:

"[Y]ou do have the right to appeal. Prior to taking any appeal you would need to file in the trial court within 30 days from which the date the sentence was issued *** a written motion asking the trial court to reconsider the sentence or to have the judgment vacated and for leave to withdraw your—and for grounds for appeal."

The court advised defendant that if he filed a motion to reconsider his sentence and the court denied the motion, he would have to file a written notice of appeal within 60 days. The court noted the deadline had been extended due to COVID-19. The court admonished defendant that he would be limited on appeal to issues raised in the motions he filed in the trial court. The court also admonished defendant he would need to set forth all his claims of error regarding the trial in

- 13 -

a motion or they would be forfeited on appeal. The court advised defendant that if he could not afford an attorney or a transcript, they would be provided to him free of charge.

¶ 52    Defense counsel filed a motion to reconsider defendant's sentence. Counsel also filed a Rule 604(d) certificate stating that he had personally consulted with defendant concerning the motion to reconsider the sentence, reviewed the report of proceedings of the sentencing hearing, examined the trial court file, and elected to make no modifications to the motion. The trial court denied the motion to reconsider the sentence, and this appeal followed.

¶ 53                                    II. ANALYSIS

¶ 54                              A. Postsentencing Claims

¶ 55    On appeal, defendant argues that, regarding the offenses to which he pleaded guilty, the matter should be remanded for strict compliance with Illinois Supreme Court Rules 605(b) and 604(d). Defendant contends the trial court failed to provide Rule 605(b) admonitions and defense counsel filed a facially deficient certificate of compliance with Rule 604(d). We address each argument in turn.

¶ 56                              1. *Rule 605(b) Admonitions*

¶ 57    Defendant argues the trial court failed to provide proper admonitions pursuant to Rule 605(b) by failing to admonish him that he needed to file a motion to withdraw his guilty plea in order to challenge the plea, the consequences of the court granting such a motion, or that any issue not raised in such a motion would be forfeited. Defendant notes he entered an open guilty plea to seven of the nine offenses of which he was convicted such that Rule 605(b) admonitions were required regarding those convictions. The State agrees remand is required due to the trial court's failure to provide defendant with any admonitions concerning the necessity of filing a motion to withdraw his guilty plea to challenge the plea.

- 14 -

¶ 58        Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) provides that no appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of sentencing, files a written motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a written motion to withdraw the plea and vacate the sentence. The failure to file a timely postplea motion pursuant to Rule 604(d) generally precludes the appellate court from considering an appeal on the merits. *People v. Flowers*, 208 Ill. 2d 291, 301 (2003). Accordingly, Rule 605(b) requires the trial court to admonish a defendant who has entered an open guilty plea of the necessity of filing a written motion to reconsider the sentence or to withdraw the guilty plea within 30 days of sentencing. Ill. S. Ct. R. 605(b) (eff. Oct. 1, 2001). Rule 605(b) also requires the court to admonish the defendant that any issue not raised in such a motion will be deemed waived for purposes of appeal. *Id.*

¶ 59        Strict compliance with Rule 605(b) is required in that the admonitions must be given. *People v. Dominguez*, 2012 IL 111336, ¶ 21. The trial court need not recite the rule verbatim but "must impart to a defendant largely that which is specified in the rule, or the rule's 'essence.' " *Id.* ¶ 19. If the trial court fails to give proper admonishments, the matter must be remanded so the defendant may receive new admonishments in compliance with Rule 605(b) and file new postsentencing motions pursuant to Rule 604(d). *People v. Young*, 387 Ill. App. 3d 1126, 1129 (2009). See also *Flowers*, 208 Ill. 2d at 301; *People v. Jamison*, 181 Ill. 2d 24, 29-30 (1998).

¶ 60        Here, the record shows the trial court failed to provide defendant with any admonitions concerning the necessity of filing a motion to withdraw his guilty plea in order to challenge the plea on appeal, as required under Rule 605(b). Accordingly, we accept the State's

concession and remand the matter for proper Rule 605(b) admonishments for the counts to which defendant pled guilty and the opportunity to file new postplea motions concerning those counts.

¶ 61                                    2. *Rule 604(d) Certificate*

¶ 62          Defendant also argues his counsel's Rule 604(d) certificate was facially deficient where counsel failed to certify that he ascertained defendant's contentions of error in the entry of the guilty plea, examined the report of proceedings of the guilty plea, or made any amendments to the motion necessary for adequate presentation of any defects in the proceedings.

¶ 63          The State concedes that the Rule 604(d) certificate is deficient due to counsel's failure to certify that he examined the report of proceedings of the guilty plea and spoke with defendant concerning his contentions of error in the entry of the guilty plea. However, the State contends the certificate's statement that counsel had made no modifications to the motion substantially complied with the requirements of the rule.

¶ 64          Rule 604(d) provides, in relevant part, as follows:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 65          Strict compliance with the provisions of Rule 604(d) is required. *People v. Janes*, 158 Ill. 2d 27, 33 (1994); *People v. Neal*, 403 Ill. App. 3d 757, 760 (2010). Generally, the

certificate itself is all the appellate court will consider in determining whether there has been compliance with Rule 604(d). *Neal*, 403 Ill. App. 3d at 760.

¶ 66　　Here, defense counsel failed to certify that he consulted with defendant to ascertain his contentions of error in the entry of the guilty plea or examined the report of proceedings of the guilty plea. Accordingly, we accept the State's concession and find remand is necessary for new postplea proceedings in strict compliance with Rule 604(d), including the filing of a proper Rule 604(d) certificate, the opportunity to file new postplea motions, and a new motion hearing. See *Janes*, 158 Ill. 2d at 33.

¶ 67　　Because remand is necessary based on other deficiencies in the certificate, we need not determine whether defense counsel's statement that he elected to make no modifications to the motion was compliant with the rule. However, on remand, counsel should specify that he has made any amendments to the postplea motions necessary for an adequate presentation of any defects in the proceedings on the guilty plea or the sentence.

¶ 68　　　　　　B. Evidence of Other Crimes or Bad Acts at Trial

¶ 69　　Defendant argues the trial court erred in admitting the four videos from his Snapchat account during his trial because the videos were evidence of other crimes or bad acts and were irrelevant and highly prejudicial.

¶ 70　　Defendant acknowledges that he failed to preserve this issue by failing to raise it in a posttrial motion. However, defendant requests that we review it under the plain error doctrine.

　　　　"[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant,

- 17 -

regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

Defendant contends that the first prong of the plain error doctrine applies because the evidence was closely balanced as to whether he acted in self-defense when he shot the victims.

¶ 71        We need not determine whether the Snapchat videos were erroneously admitted, as we find that the trial evidence was not closely balanced as to whether defendant acted in self-defense. See *People v. Belknap*, 2014 IL 117094, ¶ 66.

¶ 72        "Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense." *People v. Lee*, 213 Ill. 2d 218, 224 (2004). Under section 7-1(a) of the Criminal Code of 2012 (720 ILCS 5/7-1(a) (West 2018)), "[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." A person is justified in using force intended or likely to cause death or great bodily harm "only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." *Id.*

> "The elements of self-defense are: (1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the

use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable." *Lee*, 213 Ill. 2d at 225. A defendant's claim of self-defense fails if the State negates any of these elements. *Id.* at 225.

¶ 73    "The right of self-defense does not justify a person in committing an act of retaliation and revenge ***." *People v. Belpedio*, 212 Ill. App. 3d 155, 161 (1991). "If one responds to a confrontation with such excessive force that one is no longer acting in self-defense but in retaliation, the excessive use of force renders one the protagonist; a nonaggressor has a duty not to become the aggressor." *Id.*

¶ 74    In the instant case, the trial evidence was not closely balanced concerning whether defendant's use of force against the victims was justified as an act of self-defense, as the evidence indicated defendant acted in retaliation rather than self-defense at the time he shot the victims. Specifically, the trial evidence did not show that the force used by defendant was necessary or the danger of harm was imminent when defendant used force. The evidence showed the victims fled defendant's apartment after robbing him and defendant chased them with an AR-15 style rifle. As defendant pursued the victims, Noah heard defendant say, "I got you all b*** a*** now." Defendant fired the AR-15 style rifle at the victims 27 times as they were running away. The victims' bodies were found at the bottom of a staircase near the front door of defendant's apartment building. Their autopsies revealed that 12 of the 13 gunshot wounds on Gardner's body and all 8 gunshot wounds on Hart's body entered the backs of their bodies. Although the victims possessed firearms during the incident, there was no evidence they ever fired them. Under these circumstances, any subjective belief defendant may have had that a danger existed that required him to use the force that he used would not have been objectively reasonable.

¶ 75                                    C. Ineffective Assistance of Counsel

¶ 76            Defendant argues that his counsel provided ineffective assistance when he

stipulated to the admission of some of the 167 photographs and videos from defendant's

Snapchat account at the hearing to determine whether defendant should be sentenced as an adult.

Specifically, defendant argues his counsel performed deficiently in failing to object to the

admission of the photographs and videos where defendant was with Mays. Defendant contends

this evidence was irrelevant and prejudicial and it opened the door to the court taking judicial

notice of Mays's criminal case.

¶ 77            Defendant also argues his counsel performed deficiently in stipulating to the

admission of videos and photographs in which defendant was not identifiable or was not present.

Defendant contends these videos were irrelevant to his history but were prejudicial, as some of

them involved firearms.

¶ 78            Defendant also contends his counsel also performed deficiently in stipulating to

multiple photographs and videos that were from the same day or depicted essentially the same

content in a close span of time. Defendant argues this evidence was cumulative and suggested he

had a more significant history than he did. Defendant admits, however, that some of the videos

and photographs of defendant possessing drugs and guns were relevant.

¶ 79            Claims of ineffective assistance of counsel are governed by the standard set forth

in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this standard, a defendant must show

(1) counsel's performance was deficient and (2) the defendant was prejudiced by the deficient

performance. *Id.* at 687. In order to show prejudice, "[t]he defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 80        Under section 5-130(c)(ii) of the Juvenile Court Act (705 ILCS 405/5-130(c)(ii) (West 2018)), if, as in the instant case, the court finds after trial that a minor committed an offense that is not excluded from the jurisdiction of the Juvenile Court Act, the court shall, upon motion of the State, conduct a hearing to determine if the minor should be sentenced in criminal court. The rules of evidence at such a hearing are the same as if at trial. *Id.*

> "In making its determination, the court shall consider among other matters:
>
> (a) whether there is evidence that the offense was committed in an aggressive and premeditated manner; (b) the age of the minor; (c) the previous history of the minor; (d) whether there are facilities particularly available to the Juvenile Court or the Department of Juvenile Justice for the treatment and rehabilitation of the minor; (e) whether the security of the public requires sentencing [as an adult]; and (f) whether the minor possessed a deadly weapon when committing the offense."
>
> *Id.*

¶ 81        In the instant case, even if we were to accept defendant's argument that his counsel provided deficient performance in stipulating to the admission to some of the 167 videos and photographs from his Snapchat account, defendant has not shown he was prejudiced by counsel's alleged deficient performance. That is, he has not shown a reasonable probability exists that the outcome of the hearing would have been different if the challenged videos and photographs had not been admitted.

¶ 82        The trial court's ruling on whether defendant should be sentenced as an adult was based largely on the fact that defendant was nearly 18 at the time of the offense and the facts and

circumstances of the offense, including the fact that defendant possessed a deadly weapon during the commission of the offense. In delivering its ruling, the court also relied on the Snapchat videos and photographs generally, finding they showed defendant had a history with drugs, money, and guns prior to the incident. However, the court did not reference the specific videos and photographs in which defendant was with Mays or was not identifiable. The court also did not reference Mays's criminal court file of which it had taken judicial notice.

¶ 83       Significantly, defendant admits that some of the Snapchat videos and photographs in which he possessed drugs and guns were relevant to the court's determination as to whether he should be sentenced as an adult. Such photographs and videos would have supported the court's finding that defendant had a history with drugs and guns prior to the incident even absent the admission of the allegedly improper videos and photographs. Under these circumstances, it is not reasonably probable that the court's ruling would have been different if the challenged videos and photographs had not been admitted.

¶ 84                          III. CONCLUSION

¶ 85       For the reasons stated, we affirm the trial court's judgment concerning defendant's convictions for second degree murder.

¶ 86       With regard to defendant's convictions for two counts of possession of a stolen firearm, two counts of unlawful possession of a firearm without a FOID card, two counts of unlawful possession of firearm ammunition without a FOID card, and unlawful possession of cannabis with intent to deliver, we remand the matter for new postplea proceedings in strict compliance with Rule 604(d) and Rule 605(b). This shall include the filing of a proper Rule 604(d) certificate, proper admonishments under Rule 605(b), the opportunity for defendant to file new postplea motions, and a new hearing on any such motion.

¶ 87        Affirmed in part; cause remanded with directions.