NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230294-U

NO. 4-23-0294

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 28, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Stark County |
| JOHN H. CRAMER, | ) | No. 21CF17 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Bruce P. Fehrenbacher, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE TURNER delivered the judgment of the court.
Justices Zenoff and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed in part, vacated in part, and remanded, holding:
(1) defendant's counsel did not render ineffective assistance by arguing a novel
legal theory that defendant was not guilty of aggravated arson when he set a
residential fire while a person was inside, but then removed the person from the
building; (2) remand was required for proper Illinois Supreme Court Rule 605(b)
admonitions and new postplea motions on the counts to which defendant pled
guilty; and (3) the trial court plainly erred by failing to comply with section 5-5-6
of the Unified Code of Corrections (730 ILCS 5/5-5-6 (West 2020)) when
awarding restitution.

¶ 2    In December 2021 and January 2022, the State charged defendant with one count

of residential arson (720 ILCS 5/20-1(b) (West 2020)), four counts of aggravated cruelty to

animals (510 ILCS 70/3.02 (West 2020)), and one count of aggravated arson (720 ILCS

5/20-1.1(a)(1) (West 2020)), alleging defendant, by means of fire or explosive, knowingly

damaged a house owned by Jamie Cramer without her consent and when "he knew or reasonably

should have known one or more persons were present therein." At the time of the fire, Jamie's

disabled sister, M.B., was present at the house, but the parties disputed whether M.B. was inside the house at the time the fire was started.

¶ 3        In October 2022, defendant entered open pleas of guilty to the residential arson and aggravated cruelty to animals counts. The trial court accepted the plea but never informed defendant he had to file a motion to withdraw his plea should he wish to appeal. The case proceeded to a bench trial on the aggravated arson charge.

¶ 4        At trial, defense counsel argued the State failed to prove defendant started the fire while M.B. was in the house. However, counsel also argued the aggravated arson statute should not apply when a defendant started a fire knowing a person was inside but then took action to ensure the person's safety. The trial court found M.B. was inside the house when defendant started the fire and found him guilty. At sentencing, the court awarded restitution without receiving evidence supporting the award.

¶ 5        On appeal, defendant contends (1) defense counsel rendered ineffective assistance by arguing defendant should be found not guilty of aggravated arson when defendant set a residential fire while a person was inside, because, in doing so, counsel conceded defendant's guilt, (2) the trial court erred by failing to substantially comply with Illinois Supreme Court Rule 605(b) (eff. Oct. 1, 2001) by failing to inform him of the need to file a motion to withdraw his guilty plea to preserve issues for appeal, and (3) the court failed to comply with section 5-5-6 of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-6 (West 2020)) before awarding restitution.

¶ 6        We affirm defendant's conviction of aggravated arson. However, we vacate the restitution award and remand for further proceedings on that issue. We further remand for

proper Rule 605(b) admonitions for the counts to which defendant pled guilty and an opportunity to file new postplea motions concerning those counts.

¶ 7                                              I. BACKGROUND

¶ 8           The State charged defendant in connection with a fire at the home of his wife, Jamie, on December 20 or 21, 2021. Before trial, defendant informed the trial court he wanted to plead guilty to the count of residential arson and four counts of aggravated cruelty to animals. In relation to that, the following colloquy occurred:

"THE COURT: I have before me a plea of guilty by [defendant] to the charge of residential arson, Count 2, which is a Class 1 felony and aggravated cruelty to animals, Counts 3 through 6, which are Class 4 felonies. Do you plead guilty to those offenses?

THE DEFENDANT: Yes, sir.

THE COURT: Anybody force you or make you plead guilty?

THE DEFENDANT: No.

THE COURT: You're not under the influence of drugs or alcohol today?

THE DEFENDANT: No.

THE COURT: And you understand that by pleading guilty, there won't be any trial whatsoever?

THE DEFENDANT: Yes.

THE COURT: All right.

[STATE'S ATTORNEY]: As to these counts, I guess.

THE COURT: Pardon me?

[STATE'S ATTORNEY]: As to these counts.

THE COURT: As to these counts, correct. Right. You're still pleading not guilty with respect to Count 1, that's right?

THE DEFENDANT: Yes.

THE COURT: That's your understanding. All right. I'll accept your plea of guilty, and we can enter that showing as far as today on those counts.

[STATE'S ATTORNEY]: Judge, if I could provide a factual basis—

THE COURT: Yes.

[STATE'S ATTORNEY]: —for the plea as well? And I would first note the Class 1 felony is punishable [by] 4 to 15 years in the Department of Corrections, up to two years of [mandatory supervised release (MSR)]. The Class 4 felonies are 1 to 3 years in the Department of Corrections, probationable, and up to one year of MSR."

¶ 9    The State then presented a factual basis stating, on December 20, 2021, Jamie got into a verbal altercation with defendant at a local bar. Jamie went to a friend's house and began receiving text messages from defendant stating he was going to burn the house down. On December 21, 2021, at about 4:48 a.m., the Stark County Sheriff's Office received a call regarding a fire at Jamie's home. Defendant was found in a nearby bean field. The house and its contents sustained damage from the fire, which the State detailed in its factual basis. Special Agent Eric Duckworth of the Office of the State Fire Marshal determined the cause of the fire was incendiary, meaning it was set by an individual, and there were five areas of origin of the fire in the living room and four in the master bedroom. Duckworth interviewed defendant, who stated he started four fires in the bedroom. Defendant denied starting a fire in the living room. He stated he left nine dogs inside the residence after he set the fire. Dr. Lynn Keller, an Illinois

- 4 -

veterinarian, treated multiple dogs that were in the house. Four of those dogs were deceased upon arrival, with the cause of death being smoke inhalation from a fire. The trial court found the factual basis supported the guilty pleas.

¶ 10    The case next proceeded to a bench trial on the aggravated arson charge, during which the following colloquy occurred:

"[STATE'S ATTORNEY]: Judge, initially, due to the defendant's plea, I believe the parties would stipulate, in terms of the Class X charge, would stipulate to the fact that the defendant knowingly damaged a building or structure of Jamie Cramer, said property being her house, without the consent of the owner. I believe we would stipulate to that leaving the issue of he knew or reasonably should have known one or more persons were present therein for trial.

THE COURT: Is that right?

[DEFENSE COUNSEL]: We would stipulate to the elements as she said that my client knowingly damaged in this case by fire a structure or residence. Our case-in-chief is going to focus on the interpretation of the element that separates aggravated arson, a Class X felony, from residential arson, a Class 1 felony, and that would be the interpretation of the element that the defendant knew or reasonably should have known that persons were present therein."

¶ 11    Jamie testified she lived in the house with her sister M.B. at the time of the fire. Jamie had guardianship over M.B., who had Down syndrome and was unable to care for herself. On December 21, 2021, following an argument at a bar, defendant sent Jamie text messages stating he was burning her house down. Defendant also texted, "Go to the house and get [M.B.] I'm on the run." Jamie went to the house and saw M.B. in an ambulance. She described M.B. as

scared, without shoes, and her clothing was full of black soot. Jamie testified M.B. "wanted to go get the dogs out," and Jamie then spoke to a firefighter, "telling him to go in and get my dogs out." On cross-examination, defense counsel clarified defendant texted Jamie to "go to the house not go into the house." Jamie did not know if M.B. had tried to go back inside the burning house to try to save the dogs.

¶ 12 A witness to the fire, Thaddeus Ingels, testified he saw the house on fire and tried to see if anyone was home. He pounded on the front door and called 911. He then saw M.B. come out of the attached garage covered in soot. M.B. asked Ingels to help her get the dogs. Ingels told her no and took her to his vehicle until the ambulance arrived. Ingels testified M.B. told him, " '[Defendant] lit the house on fire.' " When Ingels asked how she knew that, M.B. said, " 'Well, he left and came back in to get me.' " M.B. also told Ingels she was in her bedroom when the fire started. On cross-examination, defense counsel elicited testimony that Ingels did not personally know where M.B. was when the fires were set, and he only knew what M.B. told him.

¶ 13 Duckworth testified about the fire investigation and his interview with defendant. He said it was difficult to get M.B. to answer questions. Duckworth described his interview with defendant as follows:

> "He was reluctant to admit that he had any doings, had any dealings with the fire. He had denied it for quite some time during the interview. I believe the interview was over an hour long, maybe two hours long. I can't remember exactly how long the interview was. But then he did finally admit that he, that he did set the fire. He also stated that he helped get [M.B.] out of the house after he

had started the fire and that he had left and left her standing in the garage when he left."

¶ 14 A video recording of Duckworth's interview with defendant was admitted into evidence. In that recording, before admitting to setting the fire, defendant told Duckworth the fire was accidental and M.B. walked out of the house behind him, possibly because she smelled something burning. Defendant indicated M.B. was in her bedroom before she followed him out of the house. Defendant later admitted to setting fires in the house and stated, "[M.B.] was out here with me. I don't know why she went back in the house." When asked why he tried to set the fire with M.B. inside, defendant said he had M.B. outside with him. When asked if that was before or after he set the fire, defendant said it was "after." He then repeated he did not know why M.B. went back into the house.

¶ 15 Defense counsel provided evidence concerning M.B.'s medical treatment on the night of the fire. Medical records showed M.B. had soot on her face, hands, and extremities, but she was in no respiratory distress. She appeared well, had normal oxygen levels, and had no coughing or breathing troubles. No singed hair or burning of lips or eyebrows was noted.

¶ 16 Defendant testified he had bipolar disorder and had "[e]xplosive behavior." He also said when he got mad, he would react angrily or "black out." Defendant admitted he gave a written statement confessing to starting fires in the house. The following colloquy then occurred:

"Q. Okay. And then the bed. Your written statement said you lit the bed on fire; right?

A. Yes.

- 7 -

Q. Okay. Well, there was someone else in the house at some point and lots of dogs; right?

A. Correct.

Q. At what point did [M.B.] leave the house, and how did [M.B.] leave the house? Let me break down the question. How did [M.B.] leave the house?

A. [M.B.] was with me. We went out of the house together.

Q. Had you formulated the notion that you were going to light things on fire at that point?

A. No.

Q. When did you decide that you were going to light things on fire?

A. When I was blacked out.

Q. Well, but you recovered your recollection sufficient to give a written statement to the fire marshal. So, do you recall being concerned about [M.B.]?

A. Yes. She was with me.

Q. And you were outside?

A. On the front porch.

Q. Front porch. And that was—she was outside when the fires were started?

A. Yes.

Q. But then you just walked off; right?

A. Yes."

Defendant admitted he previously stated in his written statement he lit four items on fire, went to the porch to smoke cigarettes, and M.B. then came outside and was talking to him. He testified

- 8 -

the timeline in his written statement was incorrect and M.B. was outside with him. He said it did not occur to him M.B. might go back inside the house to get the dogs.

¶ 17    Defendant's brother testified he asked M.B. on the morning of the fire how she got out of the house, and she said defendant got her out. When asked if she went back inside the house, she said yes, with her sister.

¶ 18    During closing arguments, the State argued "basically the issue comes down to whether [M.B.] was in the house at the time that [defendant] set the fire." The State argued the evidence showed M.B. was inside at that time and defendant's testimony lacked credibility.

¶ 19    Defense counsel argued the evidence supported the conclusion M.B. was not inside when the fire was started. Counsel noted the lack of evidence M.B. had any smoke-inhalation symptoms and argued M.B. got covered in soot when she went back inside to help the dogs. However, counsel also argued the following:

> "Judge, this Class X felony aggravated arson is defined as when in committing an arson, a person damages any building or structure and knows or reasonably should know that one or more persons are present therein.
>
> And what separates the Class One felony that has already been pled guilty to from the Class X is the risk of harm to other people. That's why it's an X and not the next step down, One.
>
> And there is plenty of case law that would show that the element of risk of harm to others is implicit in the charge itself. That's why it's a more grave offense than a Class One arson.

And a review of the case law would show that virtually all Class X cases involve someone setting a building on fire with someone inside who has no idea that they are about to be inside a burning building.

Again, the case law makes clear that the risk to others is built into the charge itself. A Westlaw search for aggravating factors would bring up [a list of cases]. I can provide those to the Court if the Court wishes to take this matter under advisement.

And to that, I would also let the Court know that we don't demand a ruling today since this is a bifurcated trial. There is a transcript from the earlier proceeding. If the Court needs time to marshal it all together and issue a ruling, that's fine with the defense.

And since the threat to the lives of others is built into the Class X arson statute, a strict technical reading of that language would be misleading, just as the statute doesn't state that the threat to the lives of persons inside a burning structure is part of the charge. That has been provided through case law.

It also doesn't address a situation where, as here, a defendant formulates a notion to start burning things, but at some point takes an affirmative action of personally seeing to it that no human being is left inside the burning building. And that is indeed what we have here.

The evidence is clear that at least at some point [defendant] made sure [M.B.] was not inside the building. The medical documents would indicate that [M.B.] didn't even have traces of carbon in her saliva. You can get that, I submit, by burning leaves in your yard."

Counsel further argued:

> "The statute uses the term therein.  Of course, we know that's an archaic term.  But therein, that's regarding the implicit aggravating factor of people inside.  And that suggests to me, Judge, that throughout the entire arson process, implying that person would be remaining oblivious to what's transpiring.

> Aggravated arson is aggravated arson because people torch buildings with people inside who don't know what's coming on.  And as miserable as my client's actions have been, and abject failure to have any compassion for the dogs, he didn't lose total compassion for [M.B.]

> The evidence is clear that he did something to ensure that she was not in a burning building.  It was minimal compassion, but compassion nevertheless, or we would be here trying a very different case."

¶ 20    The State responded the crime was complete when defendant set the fires while M.B. was inside and, under Illinois case law, it was irrelevant if defendant went back inside.  The State told the trial court "if you commit a crime, you commit a crime.  You can't steal something from a store, take it home, say I'm sorry, bring it back to the store.  You still committed theft.  That's the same for aggravated arson."

¶ 21    The trial court found defendant guilty.  The court noted the only question was whether defendant got M.B. out of the house before or after he started the fire.  The court noted M.B. said she was in her bedroom when the fire started.  The court further found the facts showed defendant knew M.B. was in the house when he started the fire.  Thus, the court found "the facts show [defendant] started the fire when [M.B.] was still in the house."  The court further found, even if M.B. came out of the house, defendant did not make sure she got away

from the house and he should have known she possibly would go back inside. The court made no mention of any concessions from defense counsel about those facts.

¶ 22 The trial court merged the counts defendant pleaded guilty to into the aggravated arson conviction and sentenced defendant to 12 years' incarceration and a $5000 fine. The court then gave defendant the following admonitions:

"I'm going to advise you of some of your rights here. You have the right to appeal the judgment of conviction excluding the sentence imposed and modified. That would be preserved only if you file a notice of appeal within 30 days of today's date.

If you seek to challenge the correctness of any aspect of the sentencing or sentencing hearing prior to taking an appeal, you must file within 30 days of today's date a written motion asking the trial court to reconsider their sentence imposed or consider changing or consider any challenges to the sentencing hearing.

And you must set forth in that motion all issues or claims of error regarding the sentence imposed or the sentencing hearing. Any issue or claim of error not in the written motion shall be deemed waived.

In order to preserve the right to appeal following a motion challenging the sentence or sentencing hearing, you must file a notice of appeal in the trial court within 30 days of entry of the order disposing of that motion.

You have a right in both of those cases, with respect to an appeal or a motion to reconsider, you're entitled to an attorney. If you can't afford an attorney, an attorney would be appointed for you. You're entitled to a transcript

of all proceedings. If you can't afford a transcript, a free copy would be provided to you." The State clarified defendant was also to serve his sentence at 85%, followed by a three-year period of MSR.

¶ 23     Also at sentencing, the trial court asked the State if it was going to seek restitution. The State responded it was but advised it did not yet have all the necessary receipts and asked to set a date for further review of that issue.

¶ 24     Defendant filed motions for a new trial and to reconsider the sentence, arguing in part the State did not prove him guilty beyond a reasonable doubt because there was evidence defendant removed M.B. from the house before her safety was jeopardized. Defendant also argued the trial court failed to give any weight to the argument the aggravated arson statute did not apply to a situation in which efforts were made to remove the risk of harm to people inside the building.

¶ 25     The trial court denied the motions and told the State to prepare an order. The State then told the court, "I have added to the order that restitution is being ordered." Defense counsel stated, "As far as the restitution amount, we don't have any rebuttal evidence, so we are at a disadvantage in that regard." No evidence was provided to support the restitution award. The court's order included $17,727.94 in restitution, with the bond applied first to restitution.

¶ 26     This appeal followed.

¶ 27                    II. ANALYSIS

¶ 28     On appeal, defendant contends (1) defense counsel rendered ineffective assistance by arguing defendant should be found not guilty of aggravated arson when defendant set a residential fire while a person was inside, because, in doing so, counsel conceded defendant's

guilt, (2) the trial court erred by failing to substantially comply with Rule 605(b) by failing to inform him of the need to file a motion to withdraw his guilty pleas to preserve issues for appeal, and (3) the court failed to comply with section 5-5-6 of the Code before awarding restitution.

¶ 29                                  A. Ineffective Assistance of Counsel

¶ 30        Defendant first contends his counsel rendered ineffective assistance by conceding M.B. was inside the house when he started the fire. He argues counsel misapprehended the law, and thus conceded his guilt by wrongly asserting defendant could be found not guilty if he set the fire while M.B. was inside but then removed her from the house.

¶ 31        Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Cathey*, 2012 IL 111746, ¶ 23, 965 N.E.2d 1109. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010).

¶ 32        Counsel's effectiveness is determined by the totality of his or her conduct, and, as a court of review, we will not inquire into areas involving the exercise of judgment, discretion, trial tactics, or strategy. *People v. Edwards*, 301 Ill. App. 3d 966, 981, 704 N.E.2d 982, 994 (1998). There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. "Indeed, strategic decisions are virtually unchallengeable as long as the strategy was not so unsound that it failed to subject the

- 14 -

State's case to any meaningful adversarial testing." *People v. Dominguez*, 331 Ill. App. 3d 1006, 1014, 773 N.E.2d 1167, 1174 (2002).

¶ 33    "The fact that one defense counsel may have pursued the defense of the cause under a different theory does not automatically render trial counsel's performance ineffective." *People v. Cunningham*, 191 Ill. App. 3d 332, 338, 547 N.E.2d 765, 770 (1989). "However, where counsel's choice of trial strategy is based upon a misapprehension of the law, the claim is reviewable and his performance may in fact be ineffective." *Cunningham*, 191 Ill. App. 3d at 338, 547 N.E.2d at 770.

¶ 34    Contrary to defendant's assertion on appeal, the record as a whole supports a conclusion that his counsel did not concede his guilt and was not operating under a misapprehension of the law. Instead, the record shows counsel sought to argue M.B. was not present when the fire was started but also sought to persuade the trial court to adopt an interpretation of the aggravated arson statute that would allow it to find defendant not guilty if it found M.B. was actually inside at the start of the fire. Throughout the trial, and during closing arguments, counsel emphasized evidence supporting the theory defendant removed M.B. from the house before the fire was started and argued the State failed to prove she was inside at that time. However, the facts were not in defendant's favor on those points, and counsel also argued the court should construe the aggravated arson statute to find defendant not guilty even if M.B. was inside when the fire was started because defendant then ensured M.B. was safely removed from the house. Under these circumstances, where the State presented overwhelming evidence defendant set the fire while M.B. was inside the house, it was reasonable for counsel to pursue a novel legal argument as a matter of strategy. Thus, based on the record as a whole, it is clear counsel did not concede defendant's guilt and was merely making an alternative legal argument.

In any event, even if we were to find counsel erred by pursuing such an argument, defendant has not established prejudice.

¶ 35    To establish prejudice, the defendant must show, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *People v. Houston*, 229 Ill. 2d 1, 4, 890 N.E.2d 424, 426 (2008). Here, in finding defendant guilty, the trial court made no mention of any concessions made by counsel during closing arguments and instead referred to facts showing M.B. was in the house when defendant started the fire. Indeed, there was overwhelming evidence supporting the court's factual findings. M.B. told Ingels she was in her bedroom when the fire started. Defendant himself also admitted she was in the house in her bedroom. To the extent defendant changed his story during trial, the State argued he lacked credibility and, by defendant's own admission, he "blacked out" and had possibly faulty memories of the timeline of events. Ultimately, the record shows the court relied on the evidence presented at trial instead of counsel's novel legal argument. Thus, had counsel never made that argument, the result of the proceeding would not have been different.

¶ 36                                B. Rule 605(b)

¶ 37    Defendant next argues the matter must be remanded because the trial court failed to properly admonish him pursuant to Rule 605(b) of the necessity to file a motion to withdraw his guilty plea in order to challenge the plea, the consequences of the court granting such a motion, or that any issue not raised in such a motion would be forfeited. Defendant notes he entered an open guilty plea to five of the six offenses of which he was convicted, such that Rule 605(b) admonitions were required regarding those convictions. Defendant also notes potential issues concerning the court's admonitions under Illinois Supreme Court Rule 402 (effective July 1, 2012) and its acceptance of his plea, which he would be precluded from raising on appeal

without first moving to withdraw the plea. For example, defendant argues the court failed to personally inform him of (1) the minimum and maximum sentences prescribed by law, (2) his right to not persist with his plea, and (3) the rights he was waiving by pleading guilty.

¶ 38        Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) provides no appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of sentencing, files a written motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a written motion to withdraw the plea and vacate the sentence.  The failure to file a timely postplea motion pursuant to Rule 604(d) generally precludes the appellate court from considering an appeal on the merits.  *People v. Flowers*, 208 Ill. 2d 291, 301, 802 N.E.2d 1174, 1180 (2003).  Accordingly, Rule 605(b) requires the trial court to admonish a defendant who has entered an open guilty plea of the necessity of filing a written motion to reconsider the sentence or to withdraw the guilty plea within 30 days of sentencing.  Ill. S. Ct. R. 605(b) (eff. Oct. 1, 2001).  Rule 605(b) also requires the trial court to admonish the defendant that any issue not raised in such a motion will be deemed waived for purposes of appeal.  Ill. S. Ct. R. 605(b) (eff. Oct. 1, 2001).

¶ 39        Strict compliance with Rule 605(b) is required in that the admonitions must be given.  *People v. Dominguez*, 2012 IL 111336, ¶ 21, 976 N.E.2d 983.  The trial court need not recite the rule verbatim but "must impart to a defendant largely that which is specified in the rule, or the rule's 'essence.' "  *Dominguez*, 2012 IL 111336, ¶ 19.  If the trial court fails to give proper admonitions, the matter must be remanded so the defendant may receive new admonitions in compliance with Rule 605(b) and file new postsentencing motions pursuant to Rule 604(d). *People v. Young*, 387 Ill. App. 3d 1126, 1129, 903 N.E.2d 434, 437 (2009); see *Flowers*, 208 Ill.

2d at 301, 802 N.E.2d at 1180-81; *People v. Jamison*, 181 Ill. 2d 24, 29-30, 690 N.E.2d 995, 998 (1998).

¶ 40　　　　　Here, the record shows the trial court failed to provide defendant with any admonitions concerning the necessity of filing a motion to withdraw his guilty plea to challenge the plea on appeal, as required under Rule 605(b). The State, without citing any authority, asserts the court was not required to admonish defendant about filing a motion to withdraw the plea. That assertion is contrary to well established case law. See *Dominguez*, 2012 IL 111336, ¶ 11. Indeed, we note in a recent case, the State conceded the failure to admonish a defendant about the necessity of filing a motion to withdraw a guilty plea was error, even when the defendant proceeded to a bench trial on other charges. *People v. Harrison*, 2022 IL App (4th) 210077-U, ¶ 60 (cited as persuasive authority under Supreme Court Rule 23(e)). Further, while defendant was not required to do so, he also identified an issue he potentially desired to raise concerning his pleas that he would be precluded from raising when he did not file a motion to withdraw the plea. Given the lack of Rule 605(b) admonitions, we remand the matter for proper Rule 605(b) admonitions concerning the counts to which defendant pled guilty and the opportunity to file new postplea motions concerning those counts.

¶ 41　　　　　　　　　　C. Restitution

¶ 42　　　　　Finally, defendant argues the trial court erred by awarding restitution without making sufficient factual findings as required by section 5-5-6 of the Code (730 ILCS 5-5-6 (West 2020)). Defendant also argues the court improperly ordered his bond to be applied first to the restitution award. Defendant recognizes he forfeited the issue by not including it in his motion challenging his sentence, but he argues plain error applies.

¶ 43        "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Synowiecki*, 2023 IL App (4th) 220834, ¶ 69; see *People v. Hillier*, 237 Ill. 2d 539, 544-45, 931 N.E.2d 1184, 1187 (2010); see also 730 ILCS 5/5-4.5-50(d) (West 2020) ("A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed with the circuit court clerk within 30 days following the imposition of sentence.").  However, we may review the claimed error if defendant established plain error.  *Synowiecki*, 2023 IL App (4th) 220834, ¶ 70.

¶ 44        "The plain-error doctrine is a narrow and limited exception."  *Synowiecki*, 2023 IL App (4th) 220834, ¶ 70.  "To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred."  *Synowiecki*, 2023 IL App (4th) 220834, ¶ 70.  " 'In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing.' "  *Synowiecki*, 2023 IL App (4th) 220834, ¶ 70 (quoting *Hillier*, 237 Ill. 2d at 545, 931 N.E.2d at 1187).  The defendant has the burden of persuasion under both prongs of the plain-error doctrine, and the procedural default will be honored if that burden is not met.  *Synowiecki*, 2023 IL App (4th) 220834, ¶ 70.

¶ 45        "In addressing defendant's plain-error contention, it is appropriate to first determine whether error occurred at all."  *Synowiecki*, 2023 IL App (4th) 220834, ¶ 71.  Section 5-5-6 provides "the [trial] court shall order restitution" in all convictions for offenses in violation of the criminal code "in which the person received any injury to his or her person or damage to his or her real or personal property as a result of the criminal act of the defendant."  730 ILCS 5/5-5-6 (West 2020).  According to section 5-5-6, when restitution is ordered, the court shall

determine the restitution owed at the sentencing hearing. In doing so, the Code requires as follows:

> "[T]he court shall determine whether the property may be restored in kind to the possession of the owner or the person entitled to possession thereof; or whether the defendant is possessed of sufficient skill to repair and restore property damaged; or whether the defendant should be required to make restitution in cash, for out-of-pocket expenses, damages, losses, or injuries found to have been proximately caused by the conduct of the defendant or another for whom the defendant is legally accountable." 730 ILCS 5/5-5-6(a) (West 2020).

Moreover, in fixing the amount of restitution to be paid in cash, the court shall

> "allow credit for property returned in kind, for property damages ordered to be repaired by the defendant, and for property ordered to be restored by the defendant; and after granting the credit, the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge." 730 ILCS 5/5-5-6(b) (West 2020).

Further, under section 5-5-6(e), "[t]he court may require the defendant to apply the balance of the cash bond, after payment of court costs, and any fine that may be imposed to the payment of restitution." 730 ILCS 5/5-5-6(e) (West 2020).

¶ 46        "According to the statute's plain language, 'the trial court must evaluate the actual costs incurred by the victim and cannot rely on conjecture or speculation as to the amount to be awarded.' " *Synowiecki*, 2023 IL App (4th) 220834, ¶ 72 (quoting *People v. Birge*, 2021 IL 125644, ¶ 48, 182 N.E.3d 608). To satisfy that requirement, " 'the trial court must receive

- 20 -

sufficient information to evaluate the accuracy of the victim's restitution claim.' " *Synowiecki*, 2023 IL App (4th) 220834, ¶ 72 (quoting *Birge*, 2021 IL 125644, ¶ 48, 182 N.E.3d 608).

¶ 47 Here, the trial court awarded restitution with no evidence presented. No determinations were made as to whether restitution was appropriate under section 5-5-6(a), nor was the amount of restitution awarded in accordance with section 5-5-6(b). Thus, the court's award was arbitrary, unreasonable, and not supported by evidence. Accordingly, the award was made in error. See *Synowiecki*, 2023 IL App (4th) 220834, ¶ 75. Further, we note the court improperly ordered the award to be taken first from defendant's bond when, under section 5-5-6(e), it could only do so after payment of court costs and the fine imposed.

¶ 48 Having found error occurred, we also find plain error applies. A restitution award made with no actual basis in the evidence denies a defendant a fair sentencing hearing concerning the award. See *Synowiecki*, 2023 IL App (4th) 220834, ¶¶ 76-77. The State essentially concedes this point in its brief. Accordingly, we vacate the restitution award and remand this case to the trial court for proper consideration of whether restitution should be awarded, the proper amount of any such award, and how defendant's bond should be applied to the award.

¶ 49                                    III. CONCLUSION

¶ 50 For the reasons stated, we affirm defendant's conviction of aggravated arson. However, we vacate the restitution award and remand for further proceedings on that issue. We further remand for proper Rule 605(b) admonitions for the counts to which defendant pled guilty and the opportunity to file new postplea motions concerning those counts.

¶ 51 Affirmed in part and vacated in part; cause remanded.