# Illinois Official Reports

## Appellate Court

---

### *People v. Dorsey*, 2016 IL App (4th) 140734

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHAD L. DORSEY, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-14-0734 |
| Filed | October 31, 2016 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 13-CF-362; the Hon. Scott Daniel Drazewski, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Akshay Mathew (argued), of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Luke McNeill (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion.<br>Justices Holder White and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Chad L. Dorsey, files this direct appeal from his conviction of home invasion after a bench trial. He claims the trial court erred when it held the victim's psychological injury was sufficient to satisfy the injury requirement of the home-invasion statute absent evidence of physical contact. He also claims the evidence was insufficient to prove his guilt beyond a reasonable doubt when the State failed to prove he intentionally caused the victim's psychological injury. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    In March 2013, the State filed a three-count information against defendant, charging him with (1) home invasion for entering the home of Trisha Convis (at trial, she was referred to as Trisha Baker), knowing someone was present, and armed himself with a dangerous weapon, a Taser (count I) (720 ILCS 5/19-6(a)(1) (West 2012)); (2) home invasion for entering Convis's home, remaining there after knowing someone was present, and intentionally injuring Normal police officer Ronald Stoll, who was inside (count II) (720 ILCS 5/19-6(a)(2) (West 2012)); and (3) disarming a peace officer by taking Officer Stoll's Taser while the officer was arresting him (count III) (720 ILCS 5/31-1a(a) (West 2012)). The grand jury filed superseding indictments on all three charges.

¶ 4    Initially, defendant entered into a plea agreement, pleading guilty to count III. The trial court set counts I and II for a jury trial. A few days later, defendant filed a *pro se* motion to withdraw his guilty plea, alleging his attorney gave him "inaccurate legal advice." The court did not rule on defendant's motion. Thereafter, the State charged defendant by indictment with another count of home invasion, alleging defendant entered Convis's home, remained in the home after knowing someone was present, and intentionally caused injury to Convis, who was inside (count IV) (720 ILCS 5/19-6(a)(2) (West 2012)). This count is subject of this appeal.

¶ 5    The trial court conducted a bench trial. The State presented testimony from Marcie Taylor, Matthew Baker, Trisha Baker, Ronald Stoll, Todd Van Hoveln, and Shane Bachman. Defendant did not present any evidence. The following is a summary of the witnesses' testimony.

¶ 6    Normal police officers Stoll, Van Hoveln, and Bachman were called upon to serve an arrest warrant on defendant. Defendant was inside Taylor's second-floor apartment when police arrived. As Taylor was talking to Stoll, defendant ran from the bathroom out the back door. Stoll chased him. Van Hoveln was standing near the back door of the apartment building, so defendant turned and ran downstairs to the lower-level apartments. Defendant tried to enter apartment number two. Stoll caught up to defendant and ordered him to place his hands behind his back. Defendant lowered his shoulder and broke into apartment number two.

¶ 7    Matthew Baker testified he and his wife, Trisha Baker, live in apartment number two. On the night of the incident, they were home watching television with Trisha's two daughters, ages 14 and 10. Defendant broke into their apartment from the back door and ran through the apartment, toward the front door. He was unable to unlock the deadbolt to get out. Stoll chased defendant through the apartment, caught him at the front door, and a struggle ensued in the living room.

¶ 8        Matthew said Trisha was "[f]reaking out," saying, "oh, my God; oh, my God; oh, my God," and the two children were "[s]cared out of their minds." The children had "shocked expressions on their face[s]." Trisha said her younger daughter was "screaming and shocked," while her older daughter had a look on her face like " 'I can't believe this is happening.' " Trisha moved her children into the kitchen to keep them "out of harm's way."

¶ 9        Stoll pulled out his Taser and ordered defendant to the ground. Defendant feigned cooperation, but he turned around and knocked the Taser out of Stoll's hand. Defendant grabbed the Taser and shot it at Stoll, hitting the wall. Stoll pulled out his service pistol and ordered defendant to drop the Taser. Defendant complied but ran into the kitchen. Bachman had entered the apartment to assist Stoll. They both struggled with defendant, attempting to gain control over him. A garbage can had been knocked over and the officers were slipping on whatever was on the floor. Defendant broke the kitchen window and jumped through. The officers chased him and eventually took him into custody.

¶ 10       When the struggle moved to the kitchen, Matthew, Trisha, and the children ran upstairs to their neighbors' apartment. When Matthew and Trisha returned to their apartment, they found their back door, kitchen window, and furniture broken. Shattered glass and garbage were on the floor in the kitchen. Trisha testified: "Myself and my youngest [daughter], we were crying, very scared, very shaken. I actually was really, really, really shaken." Stoll said the family members "were very frightened, it was obvious."

¶ 11       Trisha said, at the time of trial, she was "still actually shaken" and "really scared." She arms herself with a butcher knife when she hears noises in the apartment. Her youngest daughter will not sleep in her own bedroom and she gets scared at the sound of any "little noise."

¶ 12       Thereafter, defendant moved for a directed verdict. The trial court reserved its decision until the close of the trial. After the parties' closing arguments, the court granted defendant's motion for a directed verdict on counts I and II, but found defendant guilty on count IV. The court noted psychological injury qualified as "any injury" for the purposes of the home-invasion statute.

¶ 13       Defendant filed a motion for a new trial, raising the issues he now raises in this appeal. The trial court denied defendant's motion and sentenced him to concurrent prison terms of 7 years on count III (the count to which he had pleaded guilty) and 16 years on count IV.

¶ 14       This appeal followed.

¶ 15                                    II. ANALYSIS
¶ 16                        A. Whether the Victim Suffered an Injury
¶ 17       Defendant appeals his conviction on count IV, claiming the State failed to prove the victim suffered "any injury" within the meaning of the home-invasion statute. Defendant argues, because he never made physical contact with Trisha, the State could not prove Trisha was injured. Defendant concedes our supreme court has held the phrase "any injury" in the statute refers to both physical *and* psychological injury or harm. See *People v. Hudson*, 228 Ill. 2d 181, 195 (2008) (The fact the home-invasion statute can be found in the "Bodily Harm" portion of the Criminal Code of 1961 does not mean the legislature chose to restrict the requisite harm to physical injury.). However, defendant questions whether Trisha can be

considered "injured" when she suffers *only* a psychological injury, absent any physical contact between defendant and the victim.

¶ 18 According to defendant, the relevant Illinois Pattern Jury Instruction supports his position that at least *some* physical contact is required before a psychological or emotional injury, resulting from the physical contact, qualifies under the statute. Illinois Pattern Jury Instructions, Criminal, No. 11.53B (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 11.53B) states as follows:

> "The term 'injury' in the definition of home invasion may include physical injury. It also includes psychological or emotional trauma if that trauma was the result of some physical contact."

Further, defendant points to the instruction's committee note, which cites three cases in support—all of which involve the presence of some physical contact between the defendant and the victim. See *People v. Garrett*, 281 Ill. App. 3d 535, 542 (1996) (the Fifth District determined physical evidence of bodily harm was not required; painful penetration qualified as an "injury" given "an injury is an act that hurts" or "causes bodily pain"); *People v. Garza*, 125 Ill. App. 3d 182, 189 (1984) (the First District held the State was required to prove "some physical injury" from the rape to sustain the home-invasion conviction; proving only that a rape occurred was insufficient); *People v. Ehrich*, 165 Ill. App. 3d 1060, 1072 (1988) (this court held psychological trauma constitutes "injury" within the meaning of home-invasion statute).

¶ 19 In *Ehrich*, this court considered whether a victim in a home invasion must suffer physical injury, or whether emotional trauma constitutes an "injury." *Ehrich*, 165 Ill. App. 3d at 1071. There, the defendant entered a family's home in the middle of the night. The father awoke when he heard his seven-year-old daughter crying. *Ehrich*, 165 Ill. App. 3d at 1063. The father found the defendant holding his daughter on his lap, covering her mouth. The father struggled with the defendant and the mother called the police. *Ehrich*, 165 Ill. App. 3d at 1063.

¶ 20 On appeal, this court considered whether the trial court erred in considering the child's emotional trauma as an "injury" within the meaning of the home-invasion statute. *Ehrich*, 165 Ill. App. 3d at 1072. The defendant claimed there must be some type of pain or physical harm endured by the victim in order for there to be an "injury" for the purposes of a conviction of home invasion. *Ehrich*, 165 Ill. App. 3d at 1072. We disagreed.

¶ 21 In addressing the issue, this court noted the legislature's use of the broad term "any injury" when establishing the elements of criminal liability under the home-invasion statute. *Ehrich*, 165 Ill. App. 3d at 1072. That is, the statute sets forth guilt if a defendant "[i]ntentionally causes *any injury* *** to any person or persons within the dwelling place." (Emphasis added.) 720 ILCS 5/19-6(a)(2) (West 2012). This language differs from, and is much broader than, other criminal statutes that require an "injury" before liability is imposed. For example, the offenses of battery (720 ILCS 5/12-3(a) (West 2012)), aggravated battery (720 ILCS 5/12-3.05(a)(b) (West 2012)), aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2) (West 2012)), and battery of an unborn child (720 ILCS 5/12-3.1(a), (a-5) (West 2012)) all require "bodily harm" before criminal liability attaches. For the offense of intimidation, the legislature specifically required "physical harm" (720 ILCS 5/19-5(b) (West 2012)); and for the offense of criminal fortification of a residence or building, the legislature specifically limited criminal liability when the design of a "booby trap" intended to cause "physical injury."

- 4 -

¶ 22    The comparison of the language of the different statutes tends to demonstrate that when the legislature intends to require physical injury, it so specifies. See *Ehrich*, 165 Ill. App. 3d at 1072. It is clear the legislature "obviously intended a range of injuries broader than only physical or bodily harm" in contemplating criminal liability under the home-invasion statute. *Ehrich*, 165 Ill. App. 3d at 1072. In fact, the pain of mental or emotional injuries often exceeds the pain of physical injuries. *Ehrich*, 165 Ill. App. 3d at 1072. For that reason, this court held "psychological trauma constitutes an injury for purposes of the home[-]invasion statute." *Ehrich*, 165 Ill. App. 3d at 1072.

¶ 23    Our supreme court in *Hudson* held the same. There, the teenage victim found the defendant in her home in the middle of the night. *Hudson*, 228 Ill. 2d at 183. The defendant grabbed the victim and pushed her against the door. She began screaming for her mother. *Hudson*, 228 Ill. 2d at 183-84. He then wrapped the victim's hair around his hand and began dragging her toward the door. *Hudson*, 228 Ill. 2d at 184. The defendant ran from the house when the victim's mother appeared in the kitchen. *Hudson*, 228 Ill. 2d at 184. At the jury trial, the teenage victim testified to various physical injuries and the psychological trauma she suffered from that incident. *Hudson*, 228 Ill. 2d at 184.

¶ 24    After he was convicted of home invasion, the defendant appealed his conviction, arguing the trial court erred in (1) allowing the State to present evidence of the victim's psychological trauma, and (2) instructing the jury that evidence of psychological trauma could satisfy the injury element of the offense. *Hudson*, 228 Ill. 2d at 190. The supreme court stated as follows:

> "The internal language of the home[-]invasion statute itself indicates that legislators were familiar with the word 'bodily,' as they use that word in subsection (a)(5) of the *same statute*, referring to 'bodily harm.' 'Harm' is a synonym of 'injury.' As defined by Webster's, 'harm' means 'physical or mental damage: INJURY.' Webster's Third New International Dictionary 1034 (1976). 'Injury' means 'an act that damages, harms, or hurts: an unjust or undeserved infliction of suffering or harm.' Webster's Third New International Dictionary 1164 (1976). If, as defendant suggests, the legislators intended to limit the otherwise expansive phrase 'any injury,' they could have simply used the phrase 'bodily injury' or 'bodily harm,' as they did in subsection (a)(5) of section 12-11, and as they have done in myriad other instances throughout the Criminal Code [of 1961]. When the legislature uses certain language in one part of a statute and different language in another, we may assume different meanings were intended. [Citation.] We assume there was significance to the use of the broader term '*any* injury.' Use of the more inclusive term in this context could only mean that the phrase refers to both physical *and* psychological injury or harm." (Emphases in original.) *Hudson*, 228 Ill. 2d at 193.

¶ 25    The court went on to analyze the sentencing scheme of certain crimes that have the potential of inflicting more psychological harm than physical harm. For example, the court noted residential burglary was graded and punished more harshly than commercial burglary. *Hudson*, 228 Ill. 2d at 194 (citing Robert A. Mikos, *"Eggshell" Victims, Private Precautions, and the Societal Benefits of Shifting Crime*, 105 Mich. L. Rev. 307, 335 (2006)). The Hudson court further stated:

> "Indeed, it seems to us little more than a matter of common sense that a perpetrator's violation of the sanctity of one's living space, with the intent to cause injury, carries with it the potential for psychological injury or trauma. The legislature's use of the

broad term 'any injury' in subsection (a)(2) of the home invasion statute appears to recognize that potential." *Hudson*, 228 Ill. 2d at 194.

The court held "proof of *psychological* injury or trauma satisfies the injury element of section 12-11(a)(2) of the Criminal Code of 1961 [(now 720 ILCS 5/19-6(a)(2) (West 2012))]. Consequently, we find that the trial court did not err when it allowed evidence of psychological harm and it instructed the jury with IPI Criminal 4th No. 11.53B." (Emphasis in original.) *Hudson*, 228 Ill. 2d at 195.

¶ 26 Defendant does not refute this reasoning, but he claims in each case previously relied upon, there existed *some* form of physical contact. We acknowledge this distinction but conclude this is a distinction without a difference. The supreme court in *Hudson* did not qualify its holding with a physical-contact requirement. Likewise, our analysis in *Ehrich* did not rely upon the defendant's physical encounter with the child. This court noted the trial court had considered the defendant's physical contact with the child, finding that contact was the cause of the child's psychological trauma. *Ehrich*, 165 Ill. App. 3d at 1072. However, this court clearly found the psychological or emotional trauma, standing alone, could support a conviction for home invasion. We held "emotional trauma is an injury within the meaning of the statute defining home invasion." *Ehrich*, 165 Ill. App. 3d at 1072. We did not qualify our holding in *Ehrich* with a requirement that there be some kind of physical contact, nor do we do so here. Rather, we are guided by the plain and ordinary meaning of the language in the statute. See *People v. Eppinger*, 2013 IL 114121, ¶ 21 ("Our primary objective in construing a statute is to ascertain and give effect to the intent of the legislature, bearing in mind that the best evidence of such intent is the statutory language, given its plain and ordinary meaning."). Thus, "any injury" within the meaning of the home-invasion statute means just that—*any* physical, emotional, psychological, or traumatic injury intentionally caused by the defendant to a person inside the dwelling is sufficient to satisfy this required element, with or without physical contact.

¶ 27                                        B. Sufficiency of the Evidence

¶ 28 Defendant next contends the State failed to present sufficient evidence to prove him guilty beyond a reasonable doubt. Specifically, defendant challenges the sufficiency of the State's evidence pertaining to the alleged psychological injury suffered by Trisha. He claims there was no evidence tending to prove he had the requisite intent.

¶ 29 Matthew testified Trisha was "freaking out" and the two girls were "scared out of their minds." Defendant had shoved Trisha's 14-year-old daughter as he made his way through the apartment. Trisha testified her two daughters were in the same room with defendant when he initially struggled with Stoll. She said they were screaming and in shock during the incident. She said at the time of trial, she was still shaken by the incident. She said she did not feel safe in her apartment and was scared of answering the door. She often armed herself with a knife for protection while in her apartment. However, during cross-examination, Trisha testified she did not seek medical or psychological treatment for her fears.

¶ 30 Nevertheless, the trial court found the State had presented sufficient evidence of Trisha's psychological injury. The court specifically found defendant had intentionally caused Trisha's psychological injury based solely on defendant's conduct within the apartment.

¶ 31 In considering a challenge to the sufficiency of the evidence, we are guided by the following:

" 'Where a criminal conviction is challenged based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime.' [Citation.] When considering a challenge to the sufficiency of the evidence, we will not retry the defendant. [Citation.] We will not reverse a conviction unless it is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of the defendant's guilt." *People v. Daniels*, 2016 IL App (4th) 140131, ¶ 94 (quoting *People v. Brown*, 2013 IL 114196, ¶ 48).

In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences therefrom. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

¶ 32    As charged in this case, home invasion has two elements: the unauthorized entry of a dwelling and the intentional injury of a person therein. *People v. Peacock*, 359 Ill. App. 3d 326, 333 (2005). Defendant does not dispute the unauthorized-entry evidence. He claims only that the State failed to present sufficient evidence that he intentionally caused injury to Trisha. He contends "[t]here is no testimony on record to establish that [he] had a conscious objective to cause psychological injury to [Trisha]." This may be a true statement, but it does not accurately characterize what the State is required to prove.

¶ 33    The State need not prove defendant intended to cause Trisha psychological injuries. Rather, the State must first prove defendant possessed a criminal intent at the time he entered her apartment. See *People v. Dryden*, 363 Ill. App. 3d 447, 450 (2006). See also *People v. Hill*, 294 Ill. App. 3d 962, 973 (1998) (the defendant must possess the intent to perform a criminal act at the time of entry); *People v. Hopkins*, 229 Ill. App. 3d 665, 672 (1992) (the State can prove a defendant's intent by inferences drawn from his conduct and from surrounding circumstances). Next, although the State must prove defendant knowingly or intentionally caused injury to a person in the dwelling, the State's evidence need not come from direct evidence of the defendant's intent. See *People v. Williams*, 165 Ill. 2d 51, 64 (1995) ("Because intent is a state of mind, it can rarely be proved by direct evidence.").

¶ 34    A person acts "knowingly when he is consciously aware that his conduct is practically certain to cause the result"—here, Trisha's psychological injury. *People v. Psichalinos*, 229 Ill. App. 3d 1058, 1067 (1992). Intent can rarely be proved by direct evidence because it is a mental state. *People v. Witherspoon*, 379 Ill. App. 3d 298, 307 (2008). Instead, it may be proven by circumstantial evidence, in that it may be inferred from surrounding circumstances (*Witherspoon*, 379 Ill. App. 3d at 307) and the character of the defendant's acts (*People v. Foster*, 168 Ill. 2d 465, 484 (1995)). "The defendant is presumed to intend the natural and probable consequences of his acts ***." *People v. Terrell*, 132 Ill. 2d 178, 204 (1989).

¶ 35    Although defendant's state of mind may not have been to cause Trisha psychological injury, her injury was a natural and probable consequence of defendant's conduct. Defendant broke into her home while attempting to escape from the police. He saw Trisha, her husband, and the two children. Nevertheless, he shoved one of the girls out of his way, fought with a police officer in the living room, broke the kitchen window while fighting with the officer, disarmed the officer, and shot a Taser into Trisha's living room wall. Given these circumstances, it was not unreasonable for the trial court to conclude that defendant knew his conduct while in the family's home was practically certain to cause Trisha psychological

injury. That is, defendant is "presumed to intend the natural and probable consequences of his acts." *Terrell*, 132 Ill. 2d at 204. He knew he was breaking into someone's home and saw the family, including the children, in the apartment, yet he continued fighting with the officers, eluding his arrest, and caused damage to the home. He armed himself with the Taser after knocking it from Stoll's hand; discharged the Taser, not knowing where it would strike; and forced Stoll to pull a gun on him. Yet, he still refused to submit to the officers.

¶ 36       Given the circumstances of the incident, the trial court could reasonably infer that the natural and probable consequences of defendant's conduct while inside Trisha's apartment caused her psychological harm. This is so even without expert testimony of the resulting injury or evidence of treatment. We find the evidence was sufficient to prove defendant's intent to injure Trisha.

¶ 37                              III. CONCLUSION

¶ 38       For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 39       Affirmed.