NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241509-U

NO. 4-24-1509

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 21, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Stephenson County |
| TYLER A. WALLACE, | ) | No. 22CF70 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Glenn R. Schorsch, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justice Zenoff concurred in the judgment.
Justice Doherty specially concurred.

**ORDER**

¶ 1    *Held*: The appellate court affirmed in part, vacated in part, and remanded, holding (1) a rational trier of fact could find defendant guilty beyond a reasonable doubt, (2) the trial court did not abuse its discretion by allowing certain lay witness opinion testimony, and (3) the court plainly erred when it awarded restitution.

¶ 2    Defendant, Tyler A. Wallace, was convicted of grooming (720 ILCS 5/11-25(a) (West 2022)) in that he knowingly used a device capable of electronic data storage or transmission to seduce, solicit, lure, or entice—or attempt to seduce, solicit, lure, or entice—a child to distribute photographs depicting her sex organs. Now, on appeal, he argues the State failed to prove his guilt beyond a reasonable doubt. He further complains the trial court abused its discretion by allowing improper lay witness opinion testimony concerning the meaning of the word "send" in the context of a Snapchat message and the court erred when it awarded restitution

by failing to comply with the requirements of section 5-5-6 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-6 (West 2024)). We affirm in part, vacate in part, and remand the cause for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4        In May 2022, the State charged defendant with one count of grooming (720 ILCS 5/11-25(a) (West 2022)), alleging he knowingly used Snapchat, a multimedia messaging app, to solicit K.V., a child under the age of 17, to send him photos of her sex organs.

¶ 5        The matter proceeded to a bench trial in January 2024. At trial, K.V. testified that, in March 2022, she was 15 years old and attending high school. She testified defendant helped coach her soccer team and taught her high school forensics class. Defendant had K.V.'s phone number for school and sports reasons, and K.V. routinely left her soccer bag in defendant's classroom so she would "not have to carry it around the school."

¶ 6        One day, K.V. forgot her headphones in defendant's classroom, which defendant found. He told K.V. she owed him for it, so K.V. agreed to repay him with a bag of chips. Defendant then sent K.V. a text at 11:38 p.m. on March 15, 2022, stating, "There's another way you can repay me" followed by a winking face emoji, which, according to K.V., had a flirtatious connotation. K.V. responded at 5:48 a.m. the next morning and asked defendant how she could repay him. Defendant replied, "I'm sure you could think of something but come ask me if you can't." That same morning, defendant sent K.V. several messages on Snapchat. With Snapchat, a user can send text messages, photos, and short videos to other users. The content is on a timer and disappears after a short period unless the setting is changed by a user. Before the content disappears, recipients can save an image of the content by taking a screenshot, which then notifies the sender. K.V. testified she and defendant had not communicated on Snapchat at any

time prior to March 16, 2022.

¶ 7        Defendant's first Snapchat message to K.V. stated, "Me adding you is a hint." He then sent K.V. another Snapchat message that said "Send" with a picture of a tennis ball he had thrown at her "the day before." K.V. asked defendant what he wanted her to send, and defendant told her, "Take a guess." K.V. explained a photographic Snapchat message from someone with only the word "send" was a request for nude photos from the recipient, and based on the messages defendant had been sending her, K.V. believed defendant was asking her for nude photos. She then reported defendant's behavior to one of her other teachers.

¶ 8        P.W. testified she had been K.V.'s friend since middle school. She further testified K.V. asked her to take photos of defendant's Snapchat messages displayed on K.V.'s phone to avoid notifying defendant the messages were being preserved. P.W. also explained that a photographic Snapchat message that said "send" meant to "[s]end nude pictures."

¶ 9        Beth Summers testified she was the principal at Freeport High School in March 2022 and she became aware of the allegations against defendant after another teacher notified her. Summers was familiar with Snapchat and used it personally for dating purposes. Summers testified potential paramours sent her messages on Snapchat that said "send" when they wanted nude photos. Summers also learned from previous investigations as a school administrator that Snapchat messages stating "send" meant "to send a nude photo." According to Summers, the word had been a prominent innuendo for requesting nude photos for the last decade.

¶ 10        Tony Bradbury, a detective with the Freeport Police Department, testified he interviewed defendant on March 16, 2022, and reviewed the messages between defendant and K.V. Bradbury's interview with defendant was videotaped and submitted into evidence. During the interview, defendant acknowledged he had been communicating with K.V. via text for at

least a year. He told Bradbury that, as a high school forensics teacher, he covered the appropriate ways to use technology and the potential issues that could arise when sending or receiving nude photos. He admitted the messages he sent to K.V. at 11:38 p.m. on March 15, 2022, were inappropriate. He claimed he texted K.V. that night because he wanted to talk to her in person about being nicer to a varsity soccer team player. Defendant messaged K.V. on Snapchat the next day "to ask her the questions." He acknowledged there was no way to construe his Snapchat messages to K.V. as appropriate and that "it looked bad." He further acknowledged a reasonable person looking through his phone could perceive his conversations with K.V. as inappropriate.

¶ 11        The trial court ultimately found defendant guilty of grooming beyond a reasonable doubt. In doing so, the court determined the "game of cat and mouse" defendant played in his enticement of K.V. removed "any argument from the defense that [defendant] was looking for [K.V.] to make amends with an older soccer player." When the alleged offense occurred, K.V. was 15 years old. Defendant was over the age of 18. He was also K.V.'s high school forensics teacher and one of her soccer coaches. The court noted defendant's acknowledgement during his interview that there was no appropriate way to interpret his messages to K.V. The court also noted the fact defendant "had taught in his forensics class about technology and how to be careful with regards to inappropriate, sexual inferences." Further, the court pointed out defendant's admission "that he knew what it looked like, that it looked wrong, [and] that it looked bad."

¶ 12        The trial court thereafter denied defendant's motion for a judgment notwithstanding the verdict and sentenced him to 30 months' probation and 180 days in jail. The court also imposed a $5,000 fine and stated, "I would like $1,000 of that to go to [K.V.] to assist her with any necessary treatment. So it's $5,000, 1,000 to [K.V.] to pay for any treatment. And if

treatment includes a trip to the Wisconsin Dells, I don't care."

¶ 13       This appeal followed.

¶ 14                    II. ANALYSIS

¶ 15                    A. Sufficiency of the Evidence

¶ 16       On appeal, defendant first argues his grooming conviction must be reversed because the State presented insufficient evidence to convict him of the offense. Specifically, defendant asserts that soliciting a nude photo from a minor without specifying the sex organ does not violate Illinois's grooming statute. He further contends the State failed to prove (1) he understood his cryptic message to "send" something as a request for a nude photo or (2) he was not simply asking K.V. for a nude photo of someone else.

¶ 17       "When the sufficiency of trial evidence is at issue, a court of review must determine whether, taking the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *People v. Synowiecki*, 2023 IL App (4th) 220834, ¶ 51. A reviewing court does not retry the defendant when a challenge to the sufficiency of the evidence is presented. *People v. Baker*, 2022 IL App (4th) 210713, ¶ 35. "It is the trier of fact who 'determines the credibility of the witnesses, decides what weight to give their testimony, resolves conflicts in the evidence, and draws reasonable inferences from that evidence.' " *Baker*, 2022 IL App (4th) 210713, ¶ 35 (quoting *People v. Swenson*, 2020 IL 124688, ¶ 36). "All reasonable inferences are drawn in favor of a finding of guilt," and a conviction will be set aside "only where the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Swenson*, 2020 IL 124688, ¶ 35.

¶ 18       Defendant contends that soliciting a nude photo from a minor without specifying

the sex organ does not violate Illinois's grooming statute. To the extent defendant's argument on that point presents an issue of statutory construction, our review is *de novo*. *People v. Jones*, 2023 IL App (4th) 230837, ¶ 13. "A court's fundamental objective in addressing issues of statutory construction is to ascertain and give effect to the legislature's intent." *People v. Taylor*, 2023 IL 128316, ¶ 45. "The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning." *People v. Kastman*, 2022 IL 127681, ¶ 30. "We view the statute as a whole, construing words and phrases in connection with other relevant statutory provisions rather than in isolation, while giving each word, clause, and sentence of a statute a reasonable meaning, if possible, and not rendering any term superfluous." *People v. Fair*, 2024 IL 128373, ¶ 61.

¶ 19　　　　The grooming statute provides the following, in relevant part:

"A person commits grooming when he or she knowingly uses a computer on-line service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission *** to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child *** to distribute photographs depicting the sex organs of the child." 720 ILCS 5/11-25(a) (West 2022).

In interpreting a statute, a reviewing court "may also consider the underlying purpose of the statute's enactment, the evils sought to be remedied, and the consequences of construing the statute in one manner versus another." (Internal quotation marks omitted.) *People v. Hubbell*, 2021 IL App (2d) 190442, ¶ 16.

¶ 20　　　　Citing *Hubbell* as support, the State argues it proved defendant guilty beyond a

reasonable doubt because defendant's messages to K.V., at the very least, constituted a first step that defendant hoped would lead K.V. to send him a photo of her sex organs. In *Hubbell*, a 16-year-old minor used Snapchat to communicate with another user, later confirmed to be the defendant, her friend's father. *Hubbell*, 2021 IL App (2d) 190442, ¶¶ 4-5. The defendant sent the minor a photo of his bare buttocks with the message "now it's your turn, LOL," which the minor understood "to mean that it was her turn to send a nude photo back." *Hubbell*, 2021 IL App (2d) 190442, ¶ 6. After the minor refused, the defendant implored her to keep the exchange secret but still remarked that he would like to "get with" her if possible. *Hubbell*, 2021 IL App (2d) 190442, ¶ 6. The minor preserved a screenshot and reported the incident to police. *Hubbell*, 2021 IL App (2d) 190442, ¶ 6. When police spoke with the defendant, he admitted ownership of the account and said he knew it was wrong, and he felt like a pedophile for what he had done. *Hubbell*, 2021 IL App (2d) 190442, ¶ 7.

¶ 21          On appeal, the defendant argued the State failed to show he solicited an image of the minor's sex organs because, "under the plain language of the grooming statute, buttocks are not sex organs and that the evidence showed that he solicited only a photo of buttocks." *Hubbell*, 2021 IL App (2d) 190442, ¶ 13. The Second District, however, disagreed and found a rational trier of fact could determine the defendant was grooming the minor. *Hubbell*, 2021 IL App (2d) 190442, ¶ 20. In doing so, the court noted the legislature created the grooming offense "in response to the use of the Internet to meet and seduce children" and "the plain language of the grooming statute makes clear that the legislature sought to prevent sexual abuse of children." (Internal quotation marks omitted.) *Hubbell*, 2021 IL App (2d) 190442, ¶ 18. The court emphasized that, "in the context of a sexual abuse case," an example of grooming was "conduct intended to foster trust and remove defenses over time through a pattern of seduction and

preparation, resulting in the child being willing and compliant to the defendant's sexual abuse." (Internal quotation marks omitted.) *Hubbell*, 2021 IL App (2d) 190442, ¶ 18. Thus, depending on the circumstances of a case, a rational trier of fact could view a defendant's act of sending an inappropriate photo of something other than a sex organ as, if not a direct solicitation, a first step that hopefully would lead the child to send a photo of their sex organs. *Hubbell*, 2021 IL App (2d) 190442, ¶ 19.

¶ 22    Like *Hubbell*, this case is not as simple as defendant would have us believe. After considering the definition of grooming, we cannot agree with defendant's interpretation that a request for a nude photo from a minor that does not specify the sex organ compels a finding he was not grooming K.V. Doing so would lead to an absurd result. "Grooming is a method by which a person gains access to a child, builds trust with the child, and renders the child susceptible to sexual abuse." *People v. Vara*, 2016 IL App (2d) 140849, ¶ 41. "Also, a court presumes that the legislature did not intend to create absurd, inconvenient, or unjust results." *People v. Gutman*, 2011 IL 110338, ¶ 12. An interpretation of the grooming statute whereby a defendant is allowed to have access to a child, build trust with the child, and encourage the child to send nude photos to the defendant, so long as the defendant does not specifically request a photo of the child's sex organs, or identify a particular organ, is absurd. The legislature's decision to amend the grooming statute to widen its scope only strengthens this conclusion. See Pub. Act 104-0245, § 50 (eff. Jan. 1, 2026) (amending 720 ILCS 5/11-25). Under the amended statute, a defendant who knowingly "engages in a pattern of conduct that seduces, solicits, lures, or entices, or attempts to seduce, solicit, lure, or entice a child to engage or participate in unlawful sexual conduct that is for the purpose of sexual gratification or arousal of the victim, the accused, or another" commits grooming. Pub. Act 104-0245, § 50 (eff. Jan. 1, 2026)

(amending 720 ILCS 5/11-25). Further, legislative intent is relevant regardless of whether the statute is changed. While we do not claim the statute is unchanged, when seeking to glean the legislature's intent to change or clarify a prior law, the supreme court has said we are to look at whether the "amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history." (Internal quotation marks omitted.) *People v. McChriston*, 2014 IL 115310, ¶ 18. In fact, the legislative discussion to which the special concurrence refers begins with Representative Canty explaining how the current law preventing grooming "requires several *technical changes* to *close loopholes* and strengthen enforcement." (Emphases added.) 104th Ill. Gen. Assem., House Proceedings, Apr. 8, 2025, at 176-77 (statements of Representative Canty). See *infra* ¶ 56. What is a loophole other than "an ambiguity or omission in the text through which the intent of a statute, contract, or obligation may be evaded." Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/loophole (last visited Oct. 8, 2025). We see the amendments as clear evidence of the legislature's intent for the statute from the beginning. Defendant's understanding of the grooming statute clearly stands against its underlying purpose and the evils it seeks to remedy. See *Hubbell*, 2021 IL App (2d) 190442, ¶ 16.

¶ 23        Still, defendant contends the State failed to prove him guilty beyond a reasonable doubt of grooming. We disagree. To prove defendant guilty of grooming, the State had to show defendant's highly inappropriate electronic messages were an "attempt to seduce, solicit, lure, or entice" K.V. to send photos showing her sex organs. 720 ILCS 5/11-25(a) (West 2022). Context is particularly relevant here. Defendant was one of K.V.'s soccer coaches and her high school forensics teacher. K.V. routinely left her bag in defendant's classroom and forgot a pair of headphones one day. Defendant found them and told K.V. she owed him for it. So, K.V. agreed

to repay defendant with a bag of chips. However, defendant later sent K.V. a text at 11:38 p.m. on March 15, 2022, stating, "There's another way you can repay me" followed by a winking face emoji, which had a flirtatious connotation. When K.V. asked defendant early the next morning how she could repay him, defendant replied, "I'm sure you could think of something but come ask me if you can't." Defendant then sent K.V. a series of cryptic messages on Snapchat, telling her, "Me adding you is a hint," and, "Send." Prior to sending those messages, defendant had never communicated with K.V. via Snapchat. When K.V. asked defendant what he wanted her to send, defendant told her, "Take a guess." K.V. explained that when someone sent a message to someone else on Snapchat with only the word "send," they wanted a nude photo, and based on the messages defendant had been sending her, K.V. believed defendant wanted nude photos. Additionally, Summers testified the word "send" had been a prominent innuendo for sending nude photos for the last decade.

¶ 24       By parsing the individual messages he sent to K.V., defendant fails to recognize that grooming, unlike most acts criminalized by the Criminal Code of 2012 (720 ILCS 5/1-1 *et seq.* (West 2022)), is a process and not a single act. Illinois law defines "solicit" as "to command, authorize, *urge*, incite, request, or advise another to commit an offense." (Emphasis added.) 720 ILCS 5/2-20 (West 2022). Any acts encompassing efforts to "seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure or entice" were included within the definition of grooming. 720 ILCS 5/11-25(a) (West 2022). Thus, the entire sequence of messaging with K.V. was part of defendant's solicitation of her; defendant was just as culpable of grooming when he sent K.V. the first message at 11:38 p.m. on March 15, 2022, as he was after he messaged her "Send" the next day.

¶ 25       Defendant, however, insists he could have been seeking nude photos of someone

- 10 -

else or that he may not have grasped the connotation the word "send" had within the context of Snapchat. But, as explained above, defendant's message "Send" is not the linchpin he makes it out to be. Nor is it necessary for the trier of fact to "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Cline*, 2022 IL 126383, ¶ 34. Further, a trier of fact is not required to "disregard inferences that flow normally from the evidence before it." *Synowiecki*, 2023 IL App (4th) 220834, ¶ 51. As the trial court observed, the time, tone, and way in which defendant communicated with K.V. removes all doubt he was seeking something as innocuous as having K.V. "make amends with an older soccer player." It is well-settled that a defendant's intent can rarely be proved by direct evidence because it is a mental state. *People v. Dorsey*, 2016 IL App (4th) 140734, ¶ 34. Accordingly, intent may be inferred from surrounding circumstances and the character of the defendant's acts. *Dorsey*, 2016 IL App (4th) 140734, ¶ 34. Based on the evidence presented at trial, defendant clearly understood the appropriate ways to use technology. After all, he told police it was something he covered in his forensics class. He also taught what potential issues could arise when sending or receiving nude photos. Defendant was particularly familiar with the social media vernacular of teens; not only was he around them daily but he also undoubtedly addressed the topic in his forensics class. Moreover, defendant knew his message to K.V. at 11:38 p.m. on March 15, 2022, was inappropriate because he acknowledged it. He admitted he purposefully messaged K.V. on Snapchat "to ask her the questions" and that it "looked bad." He also admitted there was no appropriate way to construe the messages he sent to K.V. on Snapchat—messages that would have permanently disappeared had K.V. not preserved them. See *Hubbell*, 2021 IL App (2d) 190442, ¶ 20 (finding the defendant's statement to police that he knew what he did was wrong and felt like a pedophile was "evidence of his intent" that he was grooming the minor

- 11 -

victim).

¶ 26    Thus, under these circumstances, a reasonable trier of fact could determine defendant's sexually suggestive messages to K.V.—including his oblique request to "send"— were, at the very least, a first step defendant hoped would lead K.V. to send him a photo of her sex organs, if not a direct solicitation. See *Hubbell*, 2021 IL App (2d) 190442, ¶ 19. When considered along with the time, tone, and method in which defendant communicated with K.V. and his admission that there was no appropriate way to construe what he sent her, a rational trier of fact could find defendant guilty of grooming beyond a reasonable doubt. See *People v. Gonzalez*, 2025 IL App (4th) 240384, ¶ 15 (stating the relevant inquiry when reviewing a challenge to the sufficiency of the evidence is whether, when looking at the evidence in the most favorable light to the prosecution, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt).

¶ 27                    B. Lay Opinion Testimony

¶ 28    Defendant next argues the trial court abused its discretion by allowing K.V., P.W., and Summers to testify as to their opinions regarding the meaning of the word "send" within the context of a Snapchat message. Defendant asserts their opinions were improper lay witness opinion testimony because the State failed to prove they had personal knowledge defendant was requesting K.V. send a nude photo.

¶ 29    Generally, evidence is relevant and admissible if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. Rs. Evid. 401, 402 (eff. Jan. 1, 2011). Illinois's rules of evidence allow opinion testimony from lay witnesses, with some limitations.

"If the witness is not testifying as an expert, the witness' testimony

in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge." Ill. R. Evid. 701 (eff. Jan. 1, 2011).

¶ 30 "Lay opinion testimony is admissible when a lay witness would have difficulty explaining the facts upon which the opinion or inference is based, or where the opinion is of a condition that the witness could not easily describe." *People v. Walker*, 2021 IL App (4th) 190073, ¶ 34. "When considering whether a lay witness's opinion as to what a declarant meant by a statement is admissible under Rule 701, courts should consider the facts, circumstances, and context under which the statement was made." *People v. Spears*, 2024 IL App (1st) 181491, ¶ 189. "A trial court's decision on whether to admit lay witness opinion testimony is reviewed for abuse of discretion." *Spears*, 2024 IL App (1st) 181491, ¶ 189.

¶ 31 To support his argument, defendant relies on several cases in which lay witness opinion testimony was deemed improper because it went to the ultimate question of fact to be decided by the jury. See *People v. Brown*, 200 Ill. App. 3d 566, 578-80 (1990); *People v. Williams*, 264 Ill. App. 3d 278, 287-89 (1993); *People v. McCarter*, 385 Ill. App. 3d 919, 934-35 (2008). However, in *Walker*, this court reiterated "that [the ultimate question of fact objection] is no longer good law." (Internal quotation marks omitted.) *Walker*, 2021 IL App (4th) 190073, ¶ 35. In doing so, we explained the supreme court's holdings in *Zavala v. Powermatic, Inc.*, 167 Ill. 2d 542 (1995), and *People v. Terrell*, 185 Ill. 2d 467 (1998), made it clear that expert or lay witness opinions on an ultimate fact or issue were admissible. *Walker*, 2021 IL App (4th)

- 13 -

190073, ¶ 35; see Ill. R. Evid. 704 (eff. Jan. 1, 2011) (stating admissible testimony in the form of opinion or inference is not objectionable because it goes to an ultimate question of fact).

¶ 32 Here, the complained-of statements regarding the meaning of "send" in the context of a Snapchat message satisfied the requirements of Rule 701. Summers testified she personally used Snapchat for dating purposes and when potential paramours sent her messages via Snapchat that said "send," they wanted nude photos. She stated the word had been a prominent innuendo for requesting nude photos for the last decade. Summers also learned from previous investigations as a school administrator that Snapchat messages stating "send" meant "send a nude photo." "A lay witness necessarily draws on individualized experience." *People v. Richardson*, 2013 IL App (2d) 120119, ¶ 22. Even though Summers drew on her experience as a school administrator, her opinion was still a lay opinion. Likewise, K.V.'s and P.W.'s testimony was proper because it was rationally based on their perceptions and understanding that if they received a message on Snapchat that said "send," it meant send nude photos. All were subject to cross-examination, and the trial court was free to determine how much weight to give their testimony in light thereof. When taken in context, the witnesses' testimony regarding the meaning of a Snapchat message to "send" was properly admitted where it was rationally based on the witnesses' perception and own understanding of the word, rather than speculation about defendant's understanding of it, and where it was helpful in determining a fact in issue and not based on any scientific, technical, or specialized knowledge. Ill. R. Evid. 701 (eff. Jan. 1, 2011).

¶ 33 C. Restitution

¶ 34 In his final argument, defendant contends the trial court committed second-prong plain error by failing to comply with the requirements of section 5-5-6 of the Unified Code (730 ILCS 5/5-5-6 (West 2024)). On this point, we agree and remand for a proper restitution hearing.

- 14 -

¶ 35        Section 5-5-6 of the Unified Code governs restitution determinations and orders. "[W]hen restitution is ordered, the [trial] court shall determine the restitution owed at the sentencing hearing." *People v. Cramer*, 2024 IL App (4th) 230294-U, ¶ 45. In doing so, the Unified Code requires as follows:

> "[T]he court shall determine whether the property may be restored in kind to the possession of the owner or the person entitled to possession thereof; or whether the defendant is possessed of sufficient skill to repair and restore property damaged; or whether the defendant should be required to make restitution in cash, for out-of-pocket expenses, damages, losses, or injuries found to have been proximately caused by the conduct of the defendant or another for whom the defendant is legally accountable." 730 ILCS 5/5-5-6(a) (West 2024).

In fixing the amount of restitution to be paid in cash, the court shall

> "allow credit for property returned in kind, for property damages ordered to be repaired by the defendant, and for property ordered to be restored by the defendant; and after granting the credit, the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge." 730 ILCS 5/5-5-6(b) (West 2024).

Further, subsection (f) of section 5-5-6 of the Unified Code mandates:

> "Taking into consideration the ability of the defendant to pay, including any real or personal property or any other assets of the

defendant, the court shall determine whether restitution shall be
paid in a single payment or in installments, and shall fix a period of
time not in excess of 5 years, *** not including periods of
incarceration, within which payment of restitution is to be paid in
full." 730 ILCS 5/5-5-6(f) (West 2024).

¶ 36 "Compliance with this statute is mandatory." (Internal quotation marks omitted.) *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 82. If a trial court fails to specify the manner of payment—installments or lump sum—or fails to specify the time for payment, then "the restitution order is fatally incomplete." (Internal quotation marks omitted.) *Hibbler*, 2019 IL App (4th) 160897, ¶ 82.

¶ 37 Here, when the trial court mentioned restitution at the conclusion of defendant's sentencing hearing, the court set an amount, but it did not set the manner and method of payment. The court also awarded restitution with no evidence presented. No determinations were made as to whether restitution was appropriate under section 5-5-6(a), nor was the amount of restitution awarded in accordance with section 5-5-6(b). The court also made no determinations as to defendant's ability to pay, and it did not provide whether restitution would be paid in a lump sum or installments. The court did not set a timeline for payment. Finally, we note that while the court's financial sentencing order required restitution to be paid in the amount of $1,000, the court improperly ordered the award to be taken first from defendant's bond. However, under section 5-5-6(e), the court could only do so "after payment of court costs, and any fine that may be imposed to the payment of restitution." 730 ILCS 5/5-5-6(e) (West 2024).

¶ 38 Defendant acknowledges he forfeited this issue because he did not raise it at the sentencing hearing or in his posttrial motion. However, we have found second-prong plain error

where a trial court failed to comply with the plain language of section 5-5-6 of the Unified Code. See *Synowiecki*, 2023 IL App (4th) 220834, ¶¶ 76-77 (finding a restitution award made with no actual basis in the evidence denies a defendant a fair sentencing hearing concerning the award); *Hibbler*, 2019 IL App (4th) 160897, ¶ 81 (remanding the case "for the limited purpose of compliance with the requirements of the Unified Code regarding restitution" after the trial court "fail[ed] to indicate if the restitution was to be paid in a lump sum or installments"). Accordingly, we vacate the restitution award and remand this case for proper consideration of whether restitution should be awarded, the proper amount of any such award, and how defendant's bond should be applied to the award.

¶ 39                                  III. CONCLUSION

¶ 40           For the reasons stated, we vacate the restitution award and remand for further proceedings on that issue. We affirm the trial court's judgment in all other respects.

¶ 41           Affirmed in part and vacated in part; cause remanded.

¶ 42           JUSTICE DOHERTY, specially concurring:

¶ 43           The statute defendant is accused of violating narrowly defines the conduct it criminalizes, which in this instance is the solicitation of photographs of a minor's sex organs. Although defendant did not explicitly tell the minor that he was asking for photographs of her "sex organs," I find that defendant's coded request for nude photos was sufficient to permit the finder of fact to infer such a request. I write separately to explain my reasoning and to state my disagreement with some aspects of the majority's analysis.

¶ 44           I begin by noting the very narrow definition of the type of photographs that are addressed by the "grooming" statute at issue here:

"A person commits grooming when he or she knowingly uses a computer on-line service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission, performs an act in person or by conduct through a third party, or uses written communication to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child, a child's guardian, or another person believed by the person to be a child or a child's guardian *** to distribute *photographs depicting the sex organs of the child*." (Emphasis added.) 720 ILCS 5/11-25(a) (West 2022).

Though the term "sex organs" is not defined, it is commonly understood to encompass the human reproductive organs (*i.e.*, penis and vagina). *People v. Hill*, 333 Ill. App. 3d 783, 788 (2002).

¶ 45　　　　It is probative to compare the narrow prohibition of this statute with the legislature's broad definition of the type of photographs and videos defined and prohibited in the separate statute concerning child pornography. The latter prohibits a child from being "depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed or transparently clothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast of the child or other person." 720 ILCS 5/11-20.1(a)(1)(vii) (West 2022). It is entirely unclear to me why, having demonstrated the ability to broadly but explicitly define the prohibited areas of the body in the child pornography statute, the legislature narrowly tailored this provision of the "grooming" statute to only photographs of a child's sex organs. Regardless, we are not tasked with writing the statute, only interpreting it. "The cardinal rule of

- 18 -

statutory construction is to ascertain and give effect to the true intent of the legislature," and "[t]he most reliable indicator of legislative intent is found in the statutory language, given its plain and ordinary meaning." *People v. Whitehead*, 2023 IL 128051, ¶ 18.

¶ 46 The question, then, is whether the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of soliciting photographs of K.V.'s "sex organs." Certainly, had defendant made such a request clearly and in explicit language, his guilt would be easily proven. However, it is not realistic to expect that a defendant will give himself away quite so easily, so it is sometimes necessary to decipher a communication made in "coded" language. See *People v. Torres*, 2021 IL App (2d) 200420, ¶ 21 (holding that the defendant's coded messages were sufficient to conclude that he was proposing sex for money).

¶ 47 Here, the only word defendant used in the communication alleged to constitute a solicitation was "send." By itself, the word is not incriminating, but I agree with the majority that it is significant that the message was sent in the context of a string of flirtatious messages. I also agree with the majority that the trial court did not err in admitting the testimony of K.V., P.W., and Summers as to the commonly understood meaning of "send" among Snapchat users, which is a request to send "nude" photographs. Although we should be careful about the interpretation of words across generations (my parents' generation would not understand how my generation could have used the word "bad" as a positive), here there is no obvious explanation for what else might have been meant by messaging the word "send."

¶ 48 While the evidence is sufficient to conclude that defendant asked K.V. to send him a "nude" photograph, does this constitute a request for a photograph of the "sex organs?" The legislature prohibited only the latter, and the two terms are not synonyms. The word "nude" means "devoid of a natural or conventional covering," including "not covered by clothing or a

drape." Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/nude (last visited Sept. 25, 2025). According to legend, Lady Godiva rode nude through the streets of Covington to protest the heavy taxes imposed by her husband, but John Collier's famous painting of the event notably does not depict the nude Lady's "sex organs." https://magnacanvas.com/blogs/news/lady-godiva-by-john-collier?srsltid=AfmBOoqbRSdy6ljcgSbjVRmYA8yCDoQCGwAJrCWACEdfw B9ZBqlafF0o (last visited Oct. 21, 2025).

¶ 49    However, the finder of fact may draw reasonable inferences from the facts. *People v. Bates*, 2024 IL App (4th) 230011, ¶ 15. Here, while I view the question as a close one, I conclude that the trial court could have drawn the reasonable inference that, in effectively requesting a "nude" photograph, defendant violated the prohibition against soliciting a photograph of the minor's sex organs. See *Swenson*, 2020 IL 124688, ¶ 35 ("All reasonable inferences are drawn in favor of a finding of guilt."). I find this conclusion to be reasonable based on a simple understanding of how spoken communication works. The issue is not whether defendant had in mind some unstated limitation on what he was asking of K.V. but whether he could be expected to understand the response his message might prompt. Here, I conclude that the finder of fact could reasonably infer that a coded request for a "nude" photograph in the context of a flirtatious electronic conversation would be reasonably intended to prompt a response that could well include a photograph of the recipient's sex organs. Thus, I agree with the majority in rejecting defendant's challenge to the sufficiency of the evidence supporting his conviction.

¶ 50    However, I disagree with reliance on the "first step" analysis of *Hubbell*, which found that an implicit solicitation of a photo of the victim's buttocks was "at least a first step in a

- 20 -

process that the defendant hoped would lead the child to send a photograph of his or her sex organs." *Hubbell*, 2021 IL App (2d) 190442, ¶ 19. By definition, taking a step short of committing the crime means that the crime was not committed. In *People v. Van Scoyk*, 20 Ill. 2d 232, 233 (1960), the defendant was charged with, among other things, keeping a "house of ill fame" for the practice of prostitution. The supreme court reversed the defendant's conviction on that charge because it required that two or more acts of prostitution must occur at the property in question and the evidence was that there had only been one:

> "The People, however, would have us sustain the conviction on the evidence tending to show that the defendant accepted money for prostitution and admitted that she had been a prostitute since 1914. We think there is some merit in defendant's argument. While the evidence strongly tends to prove that the defendant solicited and took money for prostitution, she is specifically charged with being an inmate of a house of ill fame. It has been held that a single act of intercourse, even for pay, does not of itself make a place a house of ill fame within the common law or the statute. *** The most this record proves beyond a reasonable doubt is that defendant was willing to engage in prostitution in her own premises on a single occasion. While the conduct and admissions arouse grave suspicion of a course of misconduct, we cannot say that the record proves the character of the house beyond a reasonable doubt." *Id.* at 236-37.

¶ 51     If it were sufficient that the defendant in *Van Scoyk* had taken a "first step" toward the offense by engaging in an act of prostitution on one occasion, then her conviction would have been affirmed; it was not, because—first step or not—committing the act once was insufficient when the statute required that it be committed twice. Here, too, while defendant's conduct "arouse[s] grave suspicion of a course of misconduct," characterizing his message as a "first step" on the road to violating the statute does not affect, in one direction or the other, the sufficiency of the evidence.

¶ 52     There are circumstances in which a "first step" toward a criminal act might itself constitute a crime, such as an "attempt" offense. Juries are instructed that the crime of "attempt" requires a finding that the defendant must have taken a "substantial step" toward the commission of the ultimate offense and that he acted "with the intent to commit" the ultimate offense. Illinois Pattern Jury Instructions, Criminal, No. 6.05 (4th ed. Supp. 2014). Here, though, defendant was not charged with an "attempt" offense at all. Instead, he was charged with directly violating the statute referenced above because he "knowingly used a cellular phone and Snapchat to send messages to solicit a child, K.V., to send him photographs depicting the sex organs of K.V." It was only defendant's *last* step that crossed the line into criminal conduct; it need not be viewed as a first step toward anything else. A solicitation offense "is complete upon the utterance of the words of solicitation." *People v. Ruppenthal*, 331 Ill. App. 3d 916, 923 (2002).

¶ 53     Defendant's message sent at 11:38 p.m. on March 15, 2022, states, "There's another way you can repay me," and was accompanied by a winking face emoji. I agree that this is a wildly inappropriate message for a teacher to send to a student. The relevant statute does not, however, criminalize inappropriateness; it makes criminal the solicitation of photographs of a minor's sex organs. While I agree that defendant's "Send" message was sufficient to allow the

finder of fact to find him guilty of soliciting a photograph of the minor's sex organs, it goes well beyond the boundaries of the statute to conclude that defendant was "just as culpable" for sending the first message.

¶ 54 Furthermore, the labeling of the statute as "grooming" does not change the analysis. "Grooming" is "commonly understood as a method of building trust with a child or an adult around the child in an effort to gain access to the child, make the child a cooperative participant in the abuse, and reduce the chance that the abuse is detected or disclosed." *Vara*, 2016 IL App (2d) 140849, ¶ 37. Regardless of whether this common understanding might serve as one definition of "grooming," it is not the definition used in the statute applicable here. Though titled "grooming," the applicable statute contains its own definition of that term, which is conduct over specific electronic media that is designed to "seduce, solicit, lure, or entice" one of three things: (1) the commission of a sex offense as defined in section 2 of the Sex Offender Registration Act (730 ILCS 150/2 (West 2022)); (2) the distribution of photographs depicting the sex organs of a child, which is the charge at issue here; and (3) engaging in any "unlawful sexual conduct" with a child or person believed to be a child (720 ILCS 5/11-25(a) (West 2022)). Of the three, the one that is most narrowly specific is the second, which is what defendant was charged with violating.

¶ 55 The prohibited conduct here is essentially a simple solicitation offense, and the "grooming" label neither adds to nor detracts from the plain meaning of the statute. See *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 429-30 (2002) (stating that a statutory title is only a shorthand reference to the subject matter of the provision in question, and it cannot limit the plain meaning of the text). Moreover, official headings or titles are of use only when they shed light on an ambiguous word or phrase, and they cannot undo what the text makes

plain. *Id.* Consequently, I do not find that the statutory reference to "grooming" can be used as a mechanism to broaden the definition of that term as it is explicitly defined in the statute. Defendant either solicited a photograph of the minor's sex organs or he did not, and his guilt or innocence turns on that determination. Labeling the statute "grooming," or any other name, does not change or expand the specific provisions of the statute.

¶ 56    The legislature has apparently reconsidered the narrowness of the statute in question because, effective next year, it has enacted a broader definition of "grooming" more in line with the common understanding of the term. The new definition will cover a defendant who knowingly:

> "[E]ngages in a pattern of conduct that seduces, solicits, lures, or entices, or attempts to seduce, solicit, lure, or entice, a child to engage or participate in unlawful sexual conduct that is for the purpose of sexual gratification or arousal of the victim, the accused, or another." Pub. Act 104-0245, § 50 (eff. Jan. 1, 2026) (amending 720 ILCS 5/11-25).

¶ 57    While the issues in this case might be analyzed differently if this were the statute under which defendant was charged, we must resolve the case according to the narrower provisions in effect at the time of the offense. Statutory changes which alter the crime at issue are not given retroactive effect. See *People v. Glisson*, 202 Ill. 2d 499, 508 (2002). In limited circumstances, it is possible to view a subsequent enactment as a clarification of the prior law. See *McChriston*, 2014 IL 115310, ¶ 18 (stating that the presumption that an amendment represents a change in the law can be overcome by the legislature's clear indications to the contrary). Here, however, the sponsor of the recent legislative amendment made clear in

comments on the floor of the House of Representatives that "current Illinois law" in the area of grooming "falls short," and had added that "[m]ost notably, this bill broadens the definition of grooming." 104th Ill. Gen. Assem., House Proceedings, Apr. 8, 2025, at 176-77 (statements of Representative Canty). I would not, as the majority does, look to a new statute in divining the intention behind an old one.

¶ 58 Accordingly, while I find that the evidence was sufficient to support defendant's conviction for soliciting photos of the minor's sex organs, I believe it would be incorrect to reach that conclusion by reference to *Hubbell*'s "first step" analysis or by employing a broader definition of "grooming" than is contained in the applicable statute.